THE PEOPLE OF THE STATE OF ILLINOIS, *ex rel.*
FOX HOWARD & CO.

*v.*

THE CITY COUNCIL OF THE CITY OF CAIRO.

1.  SERVICE OF PROCESS—*upon a municipal corporation.* In an action against a municipal corporation, it appeared there was service of process upon the mayor and city clerk, and this was held to be sufficient service upon the corporation.

2.  SAME—*upon corporations, under the statute.* The general statute regulating service upon corporations, has no application to municipal corporations; they are left, as to process upon them, as at the common law, which requires such process to be served on the mayor, or other head officer.

3.  MANDAMUS—*of notice of the application.* The insufficiency of the notice of the application for a writ of mandamus is waived by the return to the alternative writ, and cannot afterwards be availed of. Appearance and pleading cure antecedent defects of that character.

4.  CITY OF CAIRO—*of its power of taxation, and of the application of funds thereby created.* A judgment was recovered against the city of Cairo for the work and labor of the plaintiffs therein for grading and filling certain streets and avenues in the city, and upon application by the plaintiffs in the judgment for a writ of mandamus to compel the city authorities to levy and collect taxes for the purpose of paying such judgment and the interest thereon, it was *held*, that while the city authorities could not levy a tax beyond the limits assigned in their charter, yet such available means as are at the disposal of the city, raised under the taxing power, and without diverting the funds from their original purposes as specified in the charter, should be applied to the payment of the judgment.

5.  The option given to the city by the act of 1867, amendatory of the charter, to set apart the interest fund for the payment of the interest on the bonded

indebtedness of the city, or for the creation of a sinking fund for the redemption of the same, does not permit the city to apply a part of that fund in discharge of the interest on the bonded debt, and to set apart the residue for the creation of a sinking fund to pay the principal, to the exclusion of other creditors.  So, if they exercise the option in either way it precludes them from exercising it in the other. And the city having exercised the option by applying a portion of the interest fund to the payment of interest on the bonded debt, any residue of such fund may be applied, first to the payment of the interest on such judgment, and the remainder, if any, to the principal; and the right of the plaintiffs in the judgment to have such residue of the interest fund so applied for their benefit, cannot be affected by any attempt on the part of the city to apply such surplus to the creation of a sinking fund to pay the bonded debt.

6.  Any surplus of the improvement fund provided for in the act, which might remain after defraying the expenses for public sewers, pumps and drainage, should be applied to the payment of such judgment, rather than to the making of other necessary improvements.

7.  But the city could not be required to put upon the market and sell any bonds the city might have on hand not negotiated, and the proceeds to be applied to the payment of the judgment, although such bonds were authorized to be issued for the payment of improvements of the nature performed by the plaintiffs in the judgment, and for which improvements the judgment was recovered; though, if the plaintiffs in the judgment should seek to have the bonds themselves delivered to them in payment of the judgment, at their par value, perhaps they would be entitled to that relief.

This was a PETITION FOR MANDAMUS, upon which the alternative writ of mandamus was awarded according to the prayer of the petition.  The facts alleged as the grounds for the writ, on the part of the relators, and the facts relied on as a defense, on the part of the respondents, as set forth in their return to the alternative writ, are fully presented in the opinion.

Mr. MELVILLE W. FULLER, Mr. W. J. ALLEN and Messrs. MULKEY & WHEELER, for the relators.

The question for solution, is the right of the relators to the levy, collection and payment of certain taxes.  The relators having recovered judgment, having demanded and been refused its payment, and having instituted proceedings to compel such payment, it is the plain duty of the corporate

authorities to levy a special tax for the purpose, if within the maximum limit of the power to levy taxes, and the order may be for the levy to be made for a series of years. *Coy* v. *City of Lyons*, 17 Iowa, 1 ; *Oswald* v. *Thoringa*, 17 Iowa, 13. And it would not be a valid defense to the application that such tax had already been levied and the levy exhausted. *Galena* v. *Almy*, 5 Wallace, 705.

So also, equities, which may have been supposed to attach to the original debt, are merged in the judgment, and cannot be asserted against a mandamus to enforce payment. *Coy* v. *City of Lyons*, 17 Iowa, 1.

Messrs. HAY, GREENE & LITTLER, Messrs. GREEN & GIL-BERT and Messrs. O'MELVENY & LANSDEN, for the respondents.

This court will not compel the levy of a tax by a municipal corporation not expressly authorized to be levied by its charter :

1. Because such charter and grants of power are construed strictly.

2. Because the exact sum authorized to be levied, being named in the charter, excludes the inference that any other or greater sum or sums was authorized to be levied.

3. Because to imply power to tax from a power to create a debt, is but construing a charter by implication, and would be the creation of charter powers, not by the legislative department, but by the judicial department of the government.

4. Because the weight of authority is against that construction, or the exercise of such power. American Law Register for May, 1863, (new series) vol. 2, p. 394, *et seq.; United States* v. *Mayor, etc., of Burlington*, in C. C. U. S. for Iowa, and the note to that case by Justice DILLON, p. 400, cites Blackwell on Tax Titles, pp. 190, 194, 196 and 197; *Kemper* v. *McClelland's Lessees*, 19 Ohio St. R. 308, (strikingly like

the case under review, and the authorities fully considered;) and see opinion in *City of Chicago* v. *Hasley*, 25 Ill. 596.

As to the $53,000 of city bonds:

1. The statement in the alternative writ, which purports to show a duty on the part of the city council to negotiate these bonds for the benefit of the relators, is, we think, defective in law, and the demurrer should be sustained to it.

2. The return shows that by the terms of the ordinance under which said bonds were authorized (although executed by the clerk and mayor of the city,) the comptroller was alone authorized to issue said bonds, and that the same are now in his hands and not issued.

3. We allege and claim that the issuing of said bonds was and is unauthorized, and we are not estopped from so alleging.

4. We question the power of the court to compel the negotiation of these bonds for any purpose. They are the mere credits of the city, like a note in the hands of the maker, payable to ————, which he intends to negotiate on general account, not for any particular creditor, in which case, and before its delivery to any one, can any particular creditor set up a distinct claim to the note or its negotiation for his benefit? The power to compel the negotiation of these bonds as they are, and at the sacrifice stated in the return, would, it seems to us, embrace a power to compel the city to borrow money without regard to the rate of interest, and to issue new and other bonds. This cannot be so.

It is well settled that the writ of peremptory mandamus will only be awarded upon a sworn statement of facts which are certain and positive—so certain, that if untrue, the relator may be convicted of perjury. The mere allegation of an inference or conclusion, without setting forth the facts on which it is founded, is insufficient; and if the writ be bad in this respect, the demurrer to the return may relate back and be sustained to the writ. 10 Wend. 25; 2 Comstock, 492; *The People* v. *Ranson*, 37 Penn. St. R. 243; *Commonwealth, etc.* v. *Coms. etc.*, 15 Barb. 513; *The People* v. *Supervisors, etc.*, 12 Ill. 254;

*Canal Trustees* v. *The People*, 33 Ill. 143 ; *The People* v. *Hatch.* ib. 9.

The alternative writ prays that the city council be commanded to "levy and collect" the respective taxes. Respondents have no power to collect taxes. They only constitute the legislative department of the city government. The taxes are collected by the treasurer, who is an elective officer and beyond the control of respondents.

The duty to be performed by respondents is not set forth with sufficient certainty; and as part of the prayer of the alternative writ will not, as it seems, be granted, no part of it will be granted.    8 Stra. R. 857 and 897 ; Buller's *Nisi Prius*, 204.

" The writ should not demand too much ; otherwise judgment will be given for the defendants. 1 Hill, 50 and 55 ; 35 Barb. 110 ; Burrill's Practice, 179.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court :

This is an application by Fox, Howard & Co., for a mandamus against the City Council of the City of Cairo, to compel them to pay a certain judgment obtained by the relators against them, rendered at the April term, 1868, of the Alexander Circuit Court, for the work and labor of relators in grading and filling certain streets and avenues in the city of Cairo.

The questions presented by this record arise on a demurrer to the return to an alternative writ of mandamus issued on the petition of Fox, Howard & Co., against the City Council of the City of Cairo.

Questions are raised as to the sufficiency of the service of process in the original action of Fox, Howard & Co. against the city of Cairo, in which they obtained their judgment ; the insufficiency of the notice of application for the writ of mandamus, and last, which is the important question, do the

facts set forth in the return to the alternative writ, preclude the relief sought?

It is contended by respondents, that if there was no service of process in the action at law against the city, nor appearance by the city, the court had no jurisdiction of the defendant, and consequently, the judgment, being by default, is void, and cannot be a valid foundation on which to base a mandamus. It is conceded, a judgment rendered by a court not having jurisdiction of the defendant, is a nullity, and may be attacked collaterally.

The action was against the City of Cairo, and service of process in this case, as appears from the sheriff's return, was as follows:

"Executed this writ by reading the same to Alexander G. Holden, mayor of the city of Cairo, and John P. Fagan, city clerk, and by leaving a true copy with each of the above named persons.

"CAIRO, Ill., March 27, 1868."

We are at a loss to perceive wherein this service is defective. There is more in it than the law requires, but that does not vitiate. It was served in due time, upon the mayor and clerk of the city, by reading. The general statute regulating service upon corporations, has no application to municipal corporations. They are left, as to process upon them, as at common law, which requires such process to be served on the mayor or other head officer. 1 Tidd Prac. 116; Ang. & Ames on Cor. 575.

This process was served on the mayor by reading, and was good service.

As to the insufficiency of the notice of this application, it is only necessary to say, that respondents having made a return to the writ, cannot now avail of the manner of giving the notice. Their appearance and pleading cure all its defects, whatever they may be.

The remaining question is one both interesting and important.

It is represented in the petition, that by the act of the general assembly of February 17, 1867, entitled, "An act to reduce the charter of the city of Cairo, and the several acts amendatory thereof, into one, and revise the same," power was vested in the city council to levy and collect taxes upon all property, real and personal, within the city, made taxable by law for State purposes, not exceeding one-half of one per centum per annum, upon the assessed value thereof, to defray the contingent and other expenses of the city not otherwise provided for, which taxes, together with the moneys arising from licenses, and from all other sources, and not otherwise specially therein appropriated, should constitute the "general fund." Also to levy and collect, upon all such property, taxes not exceeding one-half of one per centum upon the assessed value thereof, to defray the cost and expenses of making improvements upon the streets and avenues and public grounds of the city not otherwise provided for, including expenses for public sewers, pumps and drainage, which taxes should constitute the "improvement fund." But the city council should also levy and collect upon all such property, a tax of one-quarter of one per centum, which might be increased by the city council to not exceeding one-half of one per centum upon its assessed value, to be applied to the payment of interest on bonds of the city, issued and negotiated, or to be thereafter issued and negotiated, for improvements and other purposes, which taxes are made to constitute the "interest fund," and which is to be set apart and exclusively used, or so much thereof as might be necessary, for the payment of the interest upon the bonded indebtedness of the city, or the creation of a sinking fund for the redemption of the same; that they have power, by the same act, to borrow money on the credit of the city, and to issue bonds, scrip or certificates therefor, provided that no sum or sums of money should be borrowed at a greater rate of interest than ten per centum per annum, and that the aggregate of all sums, borrowed and outstanding, shall not exceed the amount of one-third of the assessed valuation of all the

taxable property, real and personal, in the city. Power is also given by the act to appropriate money, and to provide for the payment of the debts, interest and expenses of the city.

The petition also alleges, that, by a supplemental act, approved February 27, 1867, it was provided that the interest on the aggregate of all sums, borrowed and outstanding, shall never exceed the interest fund created by the act.

It is further represented in the petition, that the total bonded indebtedness of the city does not exceed one hundred and eighty thousand dollars, and that the interest upon it does not exceed the sum of fourteen thousand dollars annually, and that there was, at the time of filing this petition, in the treasury of the city, of the interest fund, the sum of twenty thousand dollars, which sum, petitioners allege, together with a tax of one-fourth of one per centum upon the assessed value of the taxable property in the city, which is alleged to be four millions of dollars, would be ample to meet and pay all interest to fall due upon the bonds of the city, now issued and negotiated, for the next two years.

It is then alleged, that the city, in the exercise of power under the charter, authorized the issue of a large amount of bonds, the interest upon which, together with the interest upon all the other bonded debt of the city, does not exceed the interest fund created by the act; that such bonds were authorised to be issued for the purpose of raising money for public improvements, and for other purposes; that the bonds were signed and sealed in accordance with the ordinance of the city council, and placed in the custody of the comptroller of the city, who is the fiscal agent of the city, and that, of such bonds, there was in the hands of the comptroller, the sum of fifty-three thousand dollars unsold and not negotiated, but which the city has full power to sell and negotiate, and to pay upon their judgment.

The relators then allege, that on obtaining their judgment against the city, it was the duty of the city to levy and collect

11—50TH ILL.

a tax of one-half of one per centum upon all property, both real and personal, subject to taxation, and to pay the amount realized therefrom upon their judgment; and they allege it was the further duty of the city to levy and collect a tax of one-fourth of one per centum upon all the taxable property in the city, and to pay the amount so to be realized upon the interest due upon their judgment; and it is further alleged, it is the duty of the city to sell the bonds on hand, and apply the amount realized toward the payment of their judgment.

It is then averred that the respondents have refused to levy a tax of one-half of one per centum, and have also refused to levy a tax of one-fourth of one per centum, and have refused to provide for the payment of the judgment, by the sale of the bonds, or otherwise, although frequently requested so to do.

The prayer is, that a mandamus may issue against the city council, commanding them to levy and collect a tax of one-half of one per centum upon all the property, real and personal, subject to taxation in the city, to be collected in money, and to apply the amount so realized toward the payment of the relators' judgment; and also commanding respondents to levy and collect a tax of one-fourth of one per centum upon all the property subject to taxation, both real and personal, in the city, to be collected in money, and the amount so realized to be applied toward the payment of the interest due on their judgment; and also that the respondents be required to negotiate and sell the above described bonds of the city, amounting to fifty-three thousand dollars, and in the hands of the comptroller, and pay the amount realized on their judgment, and that such other orders may be made as justice may require.

The city, in their return to the alternative writ, admit the possession of the several powers as alleged, but claim the power to tax is limited in various ways; that by the terms of article 5 of the charter of 1867, the taxes for the general fund and improvement fund, are not payable exclusively in money, but that the "scrip" or "orders" issued by the city are required

to be taken in payment of taxes to compose those separate funds; that such orders are annually issued by the city to the amount of thirty-five thousand dollars, and not worth more than sixty-five cents on the dollar. They aver, that neither the general fund, the improvement fund, nor the interest fund, is available for the payment of relators' judgment, for the reason, that they, the respondents, have no right to levy and collect taxes, except for the purposes expressed in the act of 1867, nor to an amount beyond the limits therein expressed; that the taxable property does not exceed three million five hundred thousand dollars, and in consequence of the receipt of orders and scrip, under the act, neither of those funds exceeds eleven thousand four hundred and seventy-five dollars per annum; that an economical administration of the city government requires thirty-five thousand dollars annually, exclusive of expenditures for interest, for street filling; that these "orders," issued by the city, have amounted to thirty-five thousand dollars annually, and that they are depreciated to sixty-five cents on the dollar; that the proceeds of the general fund, and all the other items constituting it, are not sufficient to meet the current expenses of the city. For the same reasons, the proceeds of taxes for the improvement fund cannot be greater than for the general fund. That the cost of making improvements, repairs, &c., on the streets, not otherwise provided for, was not intended to embrace street filling, that being provided for by assessment; that the primary object of the improvement fund was to provide for sewers, pumps and drainage, and that the expense of sewers alone, since March 10, 1866, amounted to twenty-six thousand forty-three dollars and ninety cents, and for pumps, fifty thousand dollars, which more than exhausts that fund; that the cost of working pumps and draining the city, at the lowest average estimate, will not be less than nine thousand dollars per annum, and in case of unusually high water in the adjacent rivers, will be more, and if any surplus should remain of that fund, after the payment of sewers, pumps and drainage, such surplus

should not be paid to relators, but should be applied to other necessary improvements, including sidewalks, &c., not provided for by assessments. They admit that the interest fund in the treasury now amounts to twenty thousand dollars, and a like sum might be collected under the taxing power conferred by the act of 1867; that by the terms of that act, that fund, and the proceeds of such tax, can be appropriated only for the payment of the interest on the bonded debt, and for the creation of a sinking fund to meet the principal of that debt, the fund being expressly created for that purpose, and no other; that the interest on the bonded debt amounts to eleven thousand nine hundred and thirty-five dollars per annum, and that before they had any notice of the application for a mandamus, they had set apart the overplus of that fund, after providing for such interest, to create a sinking fund, as the act authorized them to do. They disclaim any power to divert those funds.

Respondents question the legality of the bonds issued under the ordinance of September, 1867, a portion of which, fifty three thousand dollars, was in the hands of the comptroller, and they say, if sold they would not fetch more than sixty-five cents on the dollar, and that if they could be sold, the proceeds should be applied to the current expenses of the city.

Respondents insist, that these matters constitute a complete answer to the petition, and, as relators have demurred, all the material allegations are admitted.

In their argument they say, that when the contract was made with relators to grade and fill the streets, both parties relied, for payment, on the supposed power of the city to levy and collect assessments on the lots to be benefited by the improvement; that, the mode adopted, having been decided, in the Larned case, to be unconstitutional, they are deprived of the expected resources from them, and that they have obtained additional legislation to enable them to raise the means to pay relators' judgment; that they ordered an assessment on the property benefited by filling the streets, to the

amount of one hundred and fifteen thousand dollars, expressly for the purpose of paying relators' judgment, but that, by reason of informalities in the amended charter, and because of inequalities in the assessment, the collection is delayed and temporarily suspended, in order to obtain more perfect power by legislation. They insist they have no right to levy and collect taxes except for the purposes expressed in the act of 1867, nor to any amount beyond the limits therein prescribed.

A general demurrer was put in to this return, the effect of which is to admit the facts therein, which are well pleaded. It opens up the whole merits of the controversy, on which we are required to pronounce.

It is contended by the respondents, that the relators are entitled to no relief beyond such as may be afforded by assessments on property benefited, except by legislation, and that while the respondents are seeking for such legislation in good faith, the relators cannot complain.

We do not think this a correct view of the relators' rights. They have the judgment of a court of competent jurisdiction against the respondents, valid and binding, and from the obligation to pay which, there can be no escape. In looking at the right of the case, it matters not what may have been the inducement influencing the relators to perform this expensive work for the city, nor can it be known what it may have been. It is sufficient they made the contract with a party capable of contracting, and vested with powers, ample in their just exercise, to provide the means of payment, or a portion thereof, year after year. They knew that, besides the power of assessment, the respondents had the power to create, by taxation, a general fund, an improvement fund, and an interest fund, and the power to borrow money for purposes of improvement, and they had a right to rely upon the reasonable expectation that the city authorities would call into prompt and efficient exercise all these powers, and thereby, and without going beyond their chartered powers, create means by which to discharge their obligations to the relators.

The respondents say, in excuse, that the proceeds of the general fund, and all available items, are insufficient to meet the current expenses of the city, but they do not allege that those expenses cannot be curtailed, nor do they show how much this fund has been increased by licenses, and from sources other than the half per centum tax. It may be, for aught that appears, such additions have been large, greatly swelling the amount of this fund. Nor is it satisfactory to say, that the "orders" issued by the city, which are receivable for the taxes constituting this fund, *have* amounted to thirty-five thousand dollars per annum. It does not follow, because in previous years such an amount has been issued, that the same amount will be issued in the coming years, or that they, at the time the return was made, amounted to that sum. And as to the improvement fund, it is said, the primary object of that fund was to provide for sewers, pumps and drainage, and that the expense of sewers alone, since March 10, 1866, amounted to twenty-six thousand forty-three dollars and ninety cents, and for pumps, fifty thousand dollars, and that these more than exhaust that fund. Sewers, when once well made, endure for years, and the expenditure for pumps is not an annual one, and the cost of running them may, from a variety of causes, be lessened in each succeeding year. There may be a large surplus of this fund, and if there be, we are of opinion it should be paid to relators on their judgment, and not applied, as respondents say it should be, in other necessary improvements. Better, far better, for this proud and growing city, that such improvements should be deferred until those made by the relators are in the process of payment.

Respondents admit that the interest fund in the treasury amounts to twenty thousand dollars, and that a like sum might be collected under the taxing power conferred by the act of 1867, but they insist, that by the terms of that act, that fund, and the proceeds of such tax, can be appropriated only for the payment of the interest on the bonded debt of the city, and for the creation of a sinking fund to meet the principal of

such debt, and that before they had notice of this application, they had appropriated the surplus to such sinking fund. Service of notice of this application was made upon respondents on the 29th January, 1869, and but a few days previous, on the 6th of that month, this sinking fund was created by an ordinance passed and approved on that day. The judgment was rendered April 29, 1868.

Was the city required, under the act in question, and had it the power, thus to appropriate these moneys? What says the act of 1867? It declares, "that this fund shall be set apart and exclusively used, or so much thereof as may be necessary, for the payment of the interest on the bonded indebtedness of the city, *or* for the creation of a sinking fund for the redemption of the same." The great object was to provide for this indebtedness in one of two ways, either by paying interest on it, or funding it in such mode as would secure the holder in its payment. An option is given to the city authorities, and if they appropriated it to the payment of the interest, their option was determined. They could not do both. They could not, as this law reads, apply a portion to the interest, and the surplus to the creation of a sinking fund, and thus leave other creditors wholly unprovided for. We think that surplus is justly applicable to the payment of the relators' judgment, or other indebtedness of the city. No part of the fund can be diverted from the payment of interest on the bonded debt, as the holders of those bonds, purchasing them under the provisions of this law, have a clear right to all the benefits it confers.

We yield to the force of the objections urged by respondents to forcing a sale of the fifty-three thousand dollars of bonds yet in the hands of the comptroller. Although they were authorized for improvement purposes of the nature performed by the relators, and there may be strong equitable grounds why they should have their proceeds, there is the fact remaining in regard to them, that the city authorities have an undoubted discretion as to the time and manner of placing

them in market.  It might be greatly prejudicial to throw them upon a market where no demand existed for such securities, and they might not realize more than a very small fraction of a dollar on their nominal value, which the property of the city must finally pay.  Had the prayer been to pay over these bonds to relators on their judgment, the application might have been favorably entertained.  To compel the city to sell them, at any sacrifice, would not comport with our views of justice and right, and would be compelling an act to be done, which to do, must, in the nature of the thing, rest in the discretion of the city authorities.

It is not contended by relators that the city authorities can levy a tax beyond the limits assigned in their charter, but they do contend, and with great justice, that such available means as are at the disposal of the city, raised under the taxing power, and without diverting the funds from their original purposes, they should be permitted to have applied to the payment of the interest and principal of their judgment.

The claim is based on justice, and we accordingly direct that a peremptory writ of mandamus issue against the respondents to compel them to appropriate such surplus as may remain of the general fund, after providing for the most economical expenses of the city out of that fund, and also, the surplus of the interest fund, after providing for the interest on the bonded indebtedness of the city, to the payment of the interest on relators' judgment, and the surplus, after paying the same, to the payment of the judgment, and that respondents be required to levy, annually, a tax of one-half of one per centum on all the taxable property of the city of Cairo, for the general fund and for the interest fund, any surplus of which, after paying out of the first named fund the reasonable expenses of the city, and out of the last named fund the interest on the bonded debt of the city, that the surplus of each of those funds so to be raised by taxation, shall be applied to the payment of the interest and principal of relators' judgment, and that respondents pay the costs of this proceeding.

*Mandamus awarded.*