THE PEOPLE *ex rel.* The Chicago Title and Trust Company, Appellee, *vs.* THE VILLAGE OF GLENCOE *et al.* Appellants.

*Opinion filed October 10, 1939—Rehearing denied Dec. 6, 1939.*

MAURICE G. SHANBERG, for appellants.

CONCANNON, DILLON, BOSTELMAN & SNOOK, (WILLIAM H. DILLON, and R. F. BOSTELMAN, of counsel,) for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

The Chicago Title and Trust Company, as trustee, appellee, filed a petition for a writ of *mandamus* in the superior

court of Cook county, to compel the village of Glencoe to pay the sum of $7165.11, balance claimed to be due on a condemnation judgment of $8910, entered in a special assessment proceeding. The superior court issued the writ, holding section 32 of the Local Improvement act (Ill. Rev. Stat. 1937, chap. 24, par. 731) made the village liable to pay such judgment whether the assessment levied in the proceedings be paid or not, and ordered the appellants to pay such judgment. It also held that section 32 did not violate the State or Federal constitutions, and since the constitutionality of this section is attacked, the appeal comes directly to this court.

The village of Glencoe, by an ordinance adoped in January, 1928, provided for the construction of a concrete pavement over a strip of land owned by appellee. The cost of acquiring the property and making the improvement was to be paid by special assessment. In a condemnation proceeding in the county court of Cook county the court fixed the compensation for the land of appellee taken at $8910, and entered judgment for that amount. In June, 1930, the village elected to take the property, entered upon it and constructed the improvement. A large part of the assessment has not been collected and appellee alleged, and the court found, there was $7165.11 of the condemnation judgment due and unpaid. The record also reveals the appellee barricaded the portion of the street built upon its property and the public has been prevented from using it, but no question of title or right of possession of property is involved in this suit.

Section 32 of the Local Improvement act (Ill. Rev. Stat. 1937, chap. 24, par. 731) after making provision for a city or village to elect whether it will dismiss a proceeding in which a condemnation verdict has been rendered or have a judgment entered thereon provides: "* * * if it shall elect to enter such judgment it shall become thereby bound and liable to pay the amount thereof, whether such assess-

ment be collected or not, and such judgment of condemnation shall not be conditional," etc.

The Local Improvement act was enacted under authority of section 9 of article 9 of the constitution which granted the General Assembly power to vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of contiguous property, or otherwise. The Local Improvement act of 1897 has repeatedly been held valid. *Givens* v. *City of Chicago,* 188 Ill. 348; *Gage* v. *City of Chicago,* 225 id. 135; *City of Ottawa* v. *Colwell,* 260 id. 548; *Village of Broadview* v. *Dianish,* 335 id. 299.

It is claimed that a construction of section 32 requiring the city to pay a condemnation judgment out of corporate funds in case the assessment is not sufficient, denies to the taxpayers due process of law because many of them would not be directly benefited by the improvement.

It has been held that general taxation and special assessment may be combined in making a local improvement. (*Kuehner* v. *City of Freeport,* 143 Ill. 92; *Morgan Park* v. *Wiswall,* 155 id. 262; *Newman* v. *City of Chicago,* 153 id. 469.) Since the constitution authorizes cities to provide for the payment of such improvements by combination of special assessment and general taxation, it can be no violation of the constitution that a city becomes conditionally liable to pay a debt by general taxation, which it might be required directly, by ordinance, to pay. The statute is as much a part of the ordinance as though written into it. (*Village of Bradley* v. *New York Central Railroad Co.* 277 Ill. 608.) Under the statute the city becomes liable to pay if the land is taken but is given the right, for a period of ninety days, to elect whether it will have the proceeding dismissed or go ahead with the improvement. (Ill. Rev. Stat. 1937, chap. 24, par. 731.) It is only when it so elects that it becomes liable to the property owner, regardless of whether the assessment is collected or not. The Local Im-

provement act has been in force for over forty years and the liability of the city to pay under this section has been before this court many times without its validity being questioned. It is our conclusion that it does not violate the constitution of Illinois.

It is further claimed that the city is not liable to pay the judgment out of funds other than those raised in the special assessment proceeding. The holding of this court is adverse to this contention. (*City of Chicago* v. *McCluer*, 339 Ill. 610; *Turk* v. *City of Chicago*, 352 id. 171.) The cases of *City of Chicago* v. *Thomasson*, 259 Ill. 322, and *City of Chicago* v. *Roth*, 334 id. 132, cited by appellants, merely hold that the owner, by voluntarily delivering possession of land to the city, waives certain rights of requiring payment in advance before the city may enter, but also hold that if there be non-payment of the award for the property taken, the city may be compelled by *mandamus* or otherwise to satisfy the judgment. It is said, however, that there are no unappropriated funds available for the discharge of this judgment. The whole financial set-up of the village of Glencoe appears in the record. There are a number of special funds where money is held for a certain specific purpose, which it is not necessary to examine as they are undoubtedly not available for the payment of this debt. The bank deposit containing most of the money is designated as the general account, and in this are deposited the public benefit funds, the water funds, the road improvement funds, garbage funds, bond and interest funds and the general corporate fund derived from general taxation. When money is drawn, each check is marked so that it may be known from what source of revenue the debt is being paid. Even though there may not be actual money collected for a particular fund, the check or order on it is paid, and the deficit in the fund shown, although in the general bank account there is ample money to cover the checks. The record shows that there was in the bank in the check-

ing account, on March 31, 1938, over $130,000 which, it is claimed, has all been appropriated to some special purpose which prevents it from being available to pay a debt. It is unnecessary to examine all of the funds deposited in this account to ascertain this position is unsound. Among the moneys going into this account are the collections from the garbage department, designated as the garbage fund. The city of Glencoe operates a garbage plant and levies a tax as authorized by statute, and also renders service to others, for which it receives several thousand dollars yearly. The record shows that from 1935 to 1938 the average cost for the collection and disposal of garbage was about $28,000 per year. In February, 1935, there was on hand in cash in the garbage fund $47,723.54. For the year 1936, the city appropriated for collection and disposal of garbage the sum of $36,122, of which $15,000 was to be raised by taxation and the balance from money earned by use of the plant. In February, 1936, there was cash on hand amounting to $58,152.79. In 1936, the city appropriated $34,756 for collection and disposal of garbage, of which $17,000 was to be raised by taxation and the balance from outside service. No other appropriation, to be paid from money in the garbage fund, was made. If there was $64,303.58 on hand in February, 1937, and the expenditure for the collection and disposal of garbage for the year ending 1938 amounts to $28,056.27, there was obviously available over $35,000 of unappropriated funds in the treasury of the city of Glencoe.

There is no provision in the act relating to garbage restricting the use of surplus moneys in the garbage fund to garbage purposes. The act authorizing cities to levy a tax for collecting and disposal of garbage provides for the levying of a tax in addition to the tax levied for general corporate purposes of the city. (Ill. Rev. Stat. 1937, chap. 24, par. 645.) The city has authority, under its general powers, to use its revenue for the collection and disposal of garbage.

(*Consumers' Co.* v. *City of Chicago*, 313 Ill. 408.) In the same case it is held that the statute authorizing the levy of a special tax for garbage purposes is not a limitation upon the power of cities to dispose of garbage under the police powers granted cities prior to the passage of the act. It would, therefore, appear that the levy of this additional tax was for the purpose of providing more revenue for a carrying out of one of the general corporate powers of the city, and the statute authorizing the tax does not provide for any special application of unexpended funds raised by such special tax.

The law fixing the powers of cities and villages expressly provides that they "shall have power to control the finances and property of the corporation," (Ill. Rev. Stat. 1937, chap. 24, par. 65,) and it is within the power of the city to use the unexpended surplus of money derived from the collection of garbage taxes or from earnings of the garbage plant for any proper corporate purpose.

It is claimed by appellants that this money is reserved for depreciation and replacement of the plant. The appropriation ordinances for the years 1935-36-37 do not disclose any appropriation of moneys in the garbage fund for depreciation and replacement, but on the contrary they only appropriate money for annual expenses, which are set forth in detail, and which do not include the purposes above mentioned.

In *People* v. *City of Cairo*, 50 Ill. 154, this court held that a surplus existing in an improvement fund should be used to discharge a debt owing by the city of Cairo, and we cannot find where this authority has been overruled or departed from. In *People* v. *Kelly*, 367 Ill. 616, we said: "A city and its officers can have no higher duty than the payment of an honest debt reduced to judgment."

It appears to us that there is no question of a debt being owing to the petitioner; that it is of long standing, and that the·appellants at the time the order was made by the

superior court had funds which they could make available for the payment of this debt. It is claimed, however, that the writ of *mandamus* awarded is not broad enough to compel the city officers to take the surplus money from the garbage fund to apply in discharge of this judgment. It is surplus money that may be used for a general corporate purpose, and all that is necessary to put it into the general fund is a resolution by the board of trustees of the village. We think the writ issued by the court, directed as it is, is broad enough to require the village to do anything that is necessary to be done to apply this fund in discharge of appellee's judgment.

The briefs contain a full discussion of the other tax items going into the general account, but since there is ample money available in the surplus funds collected from the earnings of the garbage plant and the garbage tax, to pay the claim in question, it is unnecessary to pass upon the questions affecting other funds raised by the village of Glencoe for other corporate purposes.

The judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*