(No. 26264.—)

THE PEOPLE *ex rel.* Lester L. Seifried, Appellee, *vs.* THE CITY OF CHICAGO *et al.* Appellants.

*Opinion filed Nov. 18, 1941—Rehearing denied January 14, 1942.*

BARNET HODES, Corporation Counsel, (J. HERZL SEGAL, JAMES A. VELDE, and SYDNEY R. DREBIN, of counsel,) for appellants.

URION, BISHOP & SLADKEY, (HOWARD F. BISHOP, and ROBERT F. DEWEY, of counsel,) for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the court:

April 16, 1940, Lester L. Seifried, as assignee, filed in the superior court of Cook county a petition for *mandamus* to compel payment of two judgments. One of these judgments was in the sum of $8500 and the other for $8645.84. He alleged that the judgments against the city of Chicago are for the damaging of private property for public use within the meaning of section 13 of article 2 of the Illinois constitution. He also alleged demand for payment and refusal, and that the city had on hand sufficient moneys and was well able to pay the judgments, with interest. He prayed that a writ of *mandamus* issue to compel payment.

The amended answer of defendants admitted the allegations of the petition with reference to the rendition, validity, demand for payment and non-payment of the judgments, but stated they had no knowledge sufficient to form a belief with respect to the assignments of the judgments and, therefore, neither admitted nor denied the same, but demanded strict proof thereof. Attached to the answer was an affidavit of the truth of the statement of want of knowledge. The answer denied relator or his alleged assignors had been deprived of their property or that their property had been damaged contrary to the Illinois or Federal constitutions, and claimed their requirements were fully satisfied by the ascertainment of the just compensation and the entry of judgments, for the payment of which the full faith and credit of the city of Chicago is pledged, and for the delay in payment of which the law has provided the payment of interest.

The answer relied on section 7-29 of the Municipal Code of Chicago, which provides for the payment of judgments in the order of their entry. It recited that prior judgments against Chicago in the aggregate of approximately $3,900,000 remained unpaid and were required to be paid before those of relator.

The answer further stated that it was necessary, in determining whether or not *mandamus* would lie, to ascertain not only whether the city has some cash available on a particular date, but whether or not the city will be in a position to function normally thereafter in view of its reasonably estimated necessary expenses of government and income. It stated that November 15, 1940, there was $2,180,944 in the corporate purposes fund, and that all other funds of the city were restricted either by legislative act or were impressed with a trust character. It alleged the accrued pay-roll of the city was $1,555,000 and "in excess of $10,000,000 in unpaid bills for current operation expenses for the ordinary run of city operations, such as foodstuffs for patients at city hospitals and jails, coal, gasoline for fire trucks, police cars, garbage trucks, light power, election expenses, transportation for inspectors and hundreds of miscellaneous items; that all of said liabilities are necessary to be paid for the essential normal governmental functions of the city of Chicago."

The answer then stated that a great number of *mandamus* suits involving prior judgments had been filed, which suits and judgments were further identified and specified in an exhibit attached to the answer; that if *mandamus* were issued, many more such suits would be filed, causing partiality and favoritism in payment, impairment of the city's credit and of the administration of essential governmental functions.

The answer further alleged that the city had appropriated for the payment of the judgments alleged to be owned by the petitioner in the 1940 appropriation bill; that the appropriation was against current assets of the corporate purposes fund "at January 1, 1940;" that the city had not collected sufficient of said current assets since January 1, 1940, to pay all the liabilities appropriated as a charge against said current assets; that the city had done all within its power to provide for the payment of

the judgments alleged to be owned by the petitioner, but had been unable to collect sufficient of its current assets over and above moneys needed to carry on the most essential functions of government. The city, during the year 1940, levied taxes in the maximum amount authorized by law.

Relator then moved to strike the answer for the reasons its averments with respect to the financial inability of the city to pay these judgments (a) were mere conclusions of the pleader, (b) do not set forth in detail or with particularity the current operating expenses of the city and the unpaid bills therefor; (c) do not set forth with particularity the alleged expenses of the city; (d) do not set forth the essential governmental functions of the city of Chicago or what said essential governmental functions are. On the hearing of the motion to dismiss the answer, counsel for defendants offered to amend the answer by itemizing the $10,000,000 in bills above referred to, but the court said that would not cure the defect. The court thereupon awarded the peremptory writ of *mandamus*. Defendants appealed to the Appellate Court for the First District, and, upon motion of appellee, the cause was transferred to this court. Since a construction of the constitution is involved, the cause was properly transferred to this court. *People* v. *Clean Street Co.* 225 Ill. 470; *Village of Lake Zurich* v. *Deschauer*, 310 id. 209; *People* v. *City of Chicago, ante,* p. 453.

Section 7-29 of the Municipal Code of Chicago presents no defense to this action, inasmuch as we have held it to be unconstitutional in *People* v. *City of Chicago, ante,* p. 453, and the reasons there given need not be restated here.

The principal question now presented is whether the answer stated sufficient facts, which if proved, would be a defense to the petition for *mandamus*. This is, in effect, a question of whether the answer alleged facts which

showed the judgments involved cannot be paid without making it impossible for the city to carry on essential functions of government. A similar question was presented in *City of Chicago* v. *People,* 215 Ill. 235. In that case holders of vouchers issued by the city to contractors for the city's share of the public benefits in a special assessment proceeding, brought a *mandamus* suit to compel the city to provide, by proper appropriation, for payment of such vouchers. The city defended on the grounds it did not have the financial means, income and revenue out of which to appropriate the money, that it was already indebted in excess of its constitutional limit and that it could not borrow any more. The answer alleged the income available from all sources for that year would not exceed $11,409,466.46, and that the actual necessities of the city for operating expenses alone, excluding necessities for debts and for betterments, as presented by the heads of departments, exceeded $16,000,000; that there were unpaid judgments in the same class of those of relator amounting to more than $1,000,000, other judgments of $4,000,000, and a bonded indebtedness of over $15,000,000. This court held: "When a petition for a writ of *mandamus* is filed, the answer of the respondent must state positive and definite facts upon which it relies in defense. The conclusions of the pleader are not sufficient, and if the answer consists merely of general statements and conclusions the relief will be granted. * * * We are of the opinion that the answer is entirely too general, consisting of conclusions and allegations of the pleader and failing to state traversable facts, to defeat the petitioner's right to the writ. The answer alleges the amount of the total income and the amount of the actual necessary operating expenses. There is no attempt to itemize the resources and there is no attempt to itemize the expenses, so the court can ascertain whether items included in those expenses are actually necessary or not. In other words, the items of receipts and expenses

are merely the conclusions of counsel, and are so general in their terms that they do not come within the rules of pleading above announced. * * * When application is made for relief and it is admitted that the claim is a proper debt against the city, the burden is upon the city to show that it is doing all in its power to liquidate the same. In order to avoid a writ of *mandamus* it must set out clearly and definitely, in detail, all of its items of receipts and expenditures, so that the court can see that it is not the fault of the municipality that the debt is not paid."

*People* v. *City of Peoria,* 374 Ill. 313, involved a *mandamus* petition to compel payment of wages alleged to be due under the Firemen's Minimum Wage act. (Ill. Rev. Stat. 1939, chap. 24, par. 860c, *et seq.*) The answer admitted that, pursuant to statute, the appropriation ordinance contained an appropriation of $165,000 for the fire protection tax fund, conditioned upon adoption of the act, and after the act was adopted, the city levied in accordance with the appropriation ordinance. No facts were alleged showing a more detailed appropriation going into said fund and it was not shown the fund was not available for the payment of the increased wages in accordance with the Firemen's Minimum Wage act. This court said: "A city is liable for its indebtedness and it is the duty of the city authorities to make proper appropriation for the payment of the same. If it fails in this duty, the courts, upon the proper showing, will grant the creditors relief. If an application for relief is made and it is found that the claim is a proper debt against the city, the burden is upon the city to show that it is doing all in its power to pay the indebtedness. * * * In this case the defendants did not set out in detail the items properly chargeable against the fire protection tax fund, nor did they make any reference to any receipts from other sources or expenditures chargeable against such other sources when received." It was held the relators were entitled to the writ of *mandamus.* A

similar rule was laid down in *People* v. *City of Cairo,* 50 Ill. 154, at page 166.

Judged by these rules the answer failed to state sufficient facts to defeat relator's right to a writ of *mandamus.* There was no attempt to itemize the resources or expenses of the city. The figures contained in the answer are restricted to one fund, the corporate purposes fund, and the sources of income for that fund are not itemized. There is merely a statement of the amount of money in that fund on a particular date. Nor is there allegation as to what items and amounts of expenses are payable out of this fund. The fatal defect, though, is that the answer gives no figures as to any fund but the corporate purposes fund. There is a general statement that all other funds are restricted either by legislative act or are "impressed with a trust character." That is a mere conclusion of the pleader. Whether that is true must depend on facts which are not alleged here. In *People* v. *Village of Glencoe,* 372 Ill. 280, it was contended *mandamus* would not lie to compel payment of a condemnation judgment because all of the money in the city's checking account had been appropriated to some special purpose which prevented it from being available to pay a debt. After an examination of the facts and the statute relating to the garbage fund tax, it was held the city could be *mandamused* to pay the judgment from the surplus in the garbage fund. It was there pointed out that in *People* v. *City of Cairo, supra,* this court held that a surplus existing in an improvement fund could be reached to discharge a debt of the city. It will be noted that relator here does not limit his claim to payment from one fund. He demands payment from any fund which has money available for such payment. Thus it is obvious that a general allegation that all other funds are restricted and cannot be used for payment, is entirely too general and is insufficient to defeat relator's right to relief. The income and expenses of the city should have been itemized to substantiate such an asser-

tion. Moreover, the mere itemization of the bills chargeable against the corporate purposes fund would not be a sufficient showing that payment of these judgments from that fund would make it impossible for the city to carry on essential functions of government. The extent and cost of governmental activities supported by that fund are not set forth, and there is no showing that the city's activities could not be curtailed. Under the above rules that is necessary, and it is not sufficient merely to show what bills exist.

Section 40(2) of the Civil Practice act, (Ill. Rev. Stat. 1939, chap. 110, par. 164,) which applies to *mandamus* proceedings, (Ill. Rev. Stat. 1939, chap. 87, par. 11,) provides: "Every allegation, except allegations of damages, not explicitly denied, shall be deemed to be admitted, unless the party shall state in his pleading that he has no knowledge thereof sufficient to form a belief, and shall attach an affidavit of the truth of such statement of want of knowledge" etc. Here the answer stated defendants had no knowledge sufficient to form a belief as to the truth of the allegations that the judgments had been assigned to relator, and neither admitted nor denied same but demanded strict proof thereof. Attached to the answer was an affidavit of truth as to the statement of want of knowledge. This was, therefore, not an admission of the allegations with respect to ownership by assignment of the judgments. An issue of fact was raised on that question, and for this reason the court erred in awarding the writ of *mandamus* without having taken any proof. For this reason it will be necessary to reverse the order of the superior court.

The order is reversed and the cause remanded, with directions to proceed in conformity herewith.

*Reversed and remanded, with directions.*