## MARION COUNTY

*v.*

## ISAIAH D. LEAR.

108 343
25a 134

*Filed at Mt. Vernon January 22, 1884.*

1. FEES AND SALARIES—*sheriff's fees in criminal cases in case of acquittal—liability of county.* Section 19, chapter 53, of the Revised Statutes, entitled "Fees and Salaries," requiring counties to pay sheriffs their fees in criminal cases where the defendants are acquitted, etc., and to make up any deficiency in their salaries, is in all respects consistent with the constitution, and a valid enactment.

2. A county board can not refuse to pay a sheriff his fees in criminal cases, where the defendants are not liable for costs, if such fees are necessary to make up the officer's salary; but where his salary has been collected and received in full, the county is not required to allow him such fees to be applied upon arrearages in his deputy hire and other expenses. The words, "actually collected," in section 10, article 10, of the constitution, are intended to prevent the legislature from empowering the county to take fees due as so much revenue, and compensating the officers by appropriation out of the general revenues of the county actually in the treasury.

3. A sheriff's salary.was fixed at $1000 per annum, and he was by a separate order allowed $800 per annum for deputy hire, expenses, etc. He collected for the two years he was sheriff, from fees earned by him, $2560.28, before applying to the county board for an allowance for fees earned in criminal cases: *Held,* that the county board properly refused the allowance. The sheriff can collect of the county only in case of a deficiency in his "*salary,*" which is his personal compensation.

4. POLICE REGULATIONS—*by whom to be enforced.* Whether the burden of enforcing police regulations, in the absence of express constitutional restrictions, shall be borne by the State at large or be devolved upon the local municipalities, is a mere question of public policy, upon which the determination of the General Assembly is conclusive.

5. COUNTY—*legislative control over.* A county is a public corporation, which exists only for public purposes connected with the administration of the State government, and it and its revenues are alike, where no express constitutional restriction is found to the contrary, subject to legislative control.

APPEAL from the Circuit Court of Marion county; the Hon. AMOS WATTS, Judge, presiding.

Mr. C. E. JENNINGS, and Mr. M. SCHÆFFER, for the appellant:

So much of section 19, chapter 53, of the Revised Statutes, as provides, "in all criminal cases where the defendant shall be acquitted, or otherwise legally discharged, without payment of costs, the sheriff shall be paid such fees from the county treasury," is in conflict with section 10, article 10, of the constitution of 1870. This section of the constitution has been before this court in numerous cases for construction, and while section 19, chapter 53, has never been questioned in this court, it is believed the construction given to the clause of the constitution is in harmony with the position assumed by *Jennings* v. *Fayette County,* 97 Ill. 420; *Daggett* v. *Ford County,* 99 id. 334; *Cullom* v. *Dolloff,* 94 id. 331; *Briscoe* v. *Clark County,* 95 id. 309.

Prior to the adoption of the constitutional provision the sheriff took the office *cum onere,* paid for his own stationery,

fuel and other expenses, and received no pay from the county treasury, except for services rendered the county directly. *Bryner* v. *Board of Supervisors,* 24 Ill. 194; *Irvin* v. *Alexander County,* 63 id. 528; *Edgar County* v. *Mayo,* 3 Gilm. 82; *Vise* v. *Hamilton County,* 19 Ill. 78.

It is evident that the object of this provision was to limit the compensation of the officer according to the class of his county, and not to increase the same. It could not have been intended to change a former self-supporting office to one not self-supporting, but a burden upon the people. This is clearly evinced by declaring that his "compensation shall be paid only out of the fees actually collected." This view, it is confidently believed, is sustained in the cases of *Jennings* v. *Fayette County,* and *Daggett* v. *Ford County, supra.*

It has always been opposed to the policy of our laws to pay officers from the county treasury, especially in criminal cases. *Vise* v. *Hamilton County, supra; Edgar County* v. *Mayo, supra; Crawford County* v. *Sperry,* 21 Ill. 288.

Aside from any other reasons, the plaintiff can not recover because he has already received his own personal salary in full. He can not collect under the statute, from the county, deputy hire and office expenses. The words "compensation" and "salary" are used in the statute as synonymous terms. *Crawford County* v. *Lindsay,* 11 Bradw. 261.

Mr. Henry C. Goodnow, for the appellee:

*Jennings* v. *Fayette County,* 97 Ill. 420, is not just like this. There the sheriff claimed the county was bound to pay him for all of his compensation he could not collect, whether from fees or not. The court properly held that the county could not pay him out of any fund other than fees. Here the sheriff is seeking to collect the fees allowed him and earned. This is not asking for payment of compensation out of the treasury other than in fees earned by him, and which fees the county is liable for when he fails to collect from other sources.

The word "salary" is not used in section 10, article 10, but the word "compensation," and hence the word "salary" in the statute has no force, but evidently means compensation. The constitution requiring the board to fix the sheriff's compensation with clerk hire, evidently means clerk hire or deputy hire is a part of the sheriff's compensation, and hence the criminal fees can be applied to the payment of the deputy hire as well as salary. *Kilgore* v. *People*, 76 Ill. 552.

Appellant claims that the fees under section 19 can only be applied to the payment of the sheriff's personal services, but the well known principle that he who does through another does it himself, is applicable here, as the sheriff is responsible for his deputy. The board may fix the compensation of the sheriff to include deputy hire, or may fix the deputy hire separate. *Wheelock et al.* v. *People*, 84 Ill. 551.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Appellee presented a claim to the board of supervisors of Marion county for balance due him for compensation for services as sheriff, and for clerk hire, stationery, fuel, etc., to be paid by the county out of certain fees earned by him in criminal cases, where the defendant was acquitted or otherwise legally discharged without the payment of costs. The board of supervisors disallowed his claim, and he appealed from their decision to the circuit court of that county, and that court rendered judgment thereupon in his favor. This appeal is from that judgment, and it is prosecuted directly to this court upon the ground that the validity of a statute is involved in the decision of the case.

The statute in question is so much of section 19, chapter 53, of the Revised Statutes of 1874, entitled "Fees and Salaries," as provides as follows: "In all criminal cases where the defendant shall be acquitted, or otherwise legally discharged, without payment of costs, the sheriff shall be paid such fees from the county treasury: *Provided*, that no such

fees shall be paid to the sheriff from the county treasury
when the fees collected by him during such year shall equal
the compensation or salary allowed him by the county board;
*And, provided, further*, that no more of such fees shall in any
case be paid from the county treasury than shall be sufficient,
with the fees collected, to make the salary or compensation
of said sheriff." The claimed invalidity is because of its
repugnance to that part of section 10, article 10, of the con-
stitution of 1870, which is in these words: "The county
board * * * shall fix the compensation of all county
officers, with the amount of their necessary clerk hire, sta-
tionery, fuel and other expenses; and in all cases where fees
are provided for, said compensation shall be paid only out
of, and shall in no instance exceed, the fees actually col-
lected."

The contention of appellant is, the language, "shall be paid
only out of, and shall in no instance exceed, the fees actually
collected," amounts to a positive prohibition that the com-
pensation shall, in any instance, be paid out of the county
treasury,—that the words "actually collected" can have ap-
plication only to cases where the sheriff shall collect the fees
otherwise than pursuant to appropriation out of the county
treasury. This is plausible, but, in our opinion, nothing
more. In a case where the duty of the county to pay fees
is conceded, there could surely be no question, after it had
paid and the sheriff had received such fees, but that he had
"actually collected" them from the county, for the mode of
enforcing or effecting a collection, when it shall have been
successful, can by no possibility affect the fact that money
has been "actually collected." To illustrate: Suppose the
county were liable to pay costs in suits in which it is an un-
successful party, and that it is defeated in a suit, and judg-
ment rendered against it for costs. The sheriff makes proper
demand for the payment of the judgment, and through the
proper process, and by the proper officer, payment of the

judgment and costs is made to the sheriff. It is impossible to discriminate between this and other cases where the sheriff has collected a judgment, as to the fact that he has "actually collected" the judgment and costs. But it must follow that if, when costs are thus paid to the sheriff, they are literally "actually collected" by him, within the letter and spirit of the constitution, the county can not, by refusing to discharge its duty in the payment of costs, thus preventing the sheriff from actually collecting them, interpose such failure as a reason why it is not liable to pay them. The true theory of the application, in cases like the present, is not to have the county pay a salary to the sheriff, but to pay him certain costs which it owes, and which it is its duty to pay to him, in the given contingency, and then, when they are paid, he applies them, as well as other costs "actually collected," to the payment of his salary, and gives the county credit on account thereof in his settlement with it. It follows, of necessity, that in such attempt to enforce collection of costs it is competent for the county to show, in defence, that the contingency in which they are collectible does not exist. The purpose of the use of the words, "actually collected," in the connection in which they here occur, instead of being, as counsel contend, to discriminate between costs payable by an individual and private corporation and those payable by the county, was to prevent the legislature from empowering the county to take fees due, as so much revenue, and compensating the officers by appropriations out of the general revenues of the county actually in the treasury.

If we are thus far correct, it only remains, on this point, to inquire whether, apart from the language quoted from section 10, article 10, of the constitution of 1870, it was competent for the General Assembly to impose upon counties the duty of paying costs in the cases specified in the statute. We assume that no one would question the power of the General Assembly to impose such a duty upon the State. It

would be a mere question of policy with reference to the en-
forcement of the Criminal Code,—an undoubted exercise of
the police power. Whether the burden of enforcing police
regulations, in the absence of express constitutional restric-
tion,—and none such is here claimed,—shall be borne by the
State at large, or be devolved upon the local municipalities,
is a mere question of public policy, upon which the determina-
tion of the General Assembly is conclusive.

A county is a public corporation, which exists only for
public purposes connected with the administration of the
State government, and it and its revenues are alike, where
no express constitutional restriction is found to the con-
trary, subject to legislative control. (*County of Richland* v.
*County of Lawrence*, 12 Ill. 1; *County of Pike* v. *State*, 11
id. 202; *Dennis* v. *Maynard*, 15 id. 477.) And accordingly
it was said, in *People ex rel. City of Springfield* v. *Power,
County Judge*, 25 Ill. 191: "The revenues of a county are
not the property of the county, in the sense in which the
revenue of a private person or corporation is regarded. The
whole State has an interest in the revenue of a county, and,
for the public good, the legislature must have the power to
direct its application. The power conferred upon a county
to raise a revenue by taxation is a political power, and its
application, when collected, must necessarily be within the
control of the legislature for political purposes." And see,
also, to like effect, *Sangamon County* v. *City of Springfield*,
63 Ill. 66; *Logan County* v. *City of Lincoln*, 81 id. 156.

Analogous instances of the undoubtedly rightful imposition
of police burdens upon counties exist in the familiar cases of
the paying grand and petit jurors for their services in enforc-
ing the Criminal Code; the paying of salaries to State's attor-
neys; the paying of rewards for the capture, etc., of different
classes of criminals; the paying of witness' fees in criminal
cases, in certain contingencies; the providing and payment
for support of paupers; the building of jails, and the paying

for dieting, clothing, etc., of prisoners. Many other instances might be added, but it is surely unnecessary. We do not believe that any clearer power of legislation for police purposes exists under the constitution than that exercised in the enactment under consideration. We think it is, in all respects, consistent with the constitution, and therefore a valid statute. It is true the incumbent of an office takes it with its burdens, but he no less takes it with its benefits, and the benefits of this enactment were a part of the inducement held out to him to accept the office at the salary or compensation fixed by the board of supervisors, and there is no more reason why he should be deprived of this than of any other guaranty of compensation under which he accepted the office.

It was shown in proof, upon the trial, that appellee was sheriff of Marion county for two years; that his salary or compensation was fixed at $1000 per annum, and he was, by a separate order, allowed $800 per annum for deputy hire, expenses, etc. He collected from fees earned as sheriff, before making the present application, $2560.28, which is, of course, in excess of his salary or personal compensation as sheriff, and appellant insists, on this state of facts, even conceding the statute to be constitutional, he is not entitled to collect the fees in the criminal cases from the county. We entirely concur in this view. The word "salary," as used in the statute, clearly applies to the personal compensation provided to be paid to the sheriff for his own services. We have held that this personal compensation must be paid as fixed by the board of supervisors, and when fixed separately from the allowance made for deputy hire and other expenses, he can receive no more on the latter account than he shall actually pay out, not exceeding the sum fixed by the board. *Jennings* v. *Fayette County,* 97 Ill. 419; *Daggett* v. *Ford County,* 99 id. 334; *Cullom* v. *Dolloff,* 94 id. 330; *Briscoe* v. *Clark County,* 95 id. 309.

We are aware of no instance in our law where the word
"salary" is used merely to express the idea of a payment for
expenses actually incurred, and since it is to the statute alone
to which appellee must look for authority to demand the pay-
ment of these fees by the county, he must show a deficiency
in the payment of his "salary,"—*i. e.,* personal compensa-
tion,—after applying to the payment thereof all the fees col-
lected by him from other sources, before he can require the
county to pay these fees in criminal cases, and then it can
only be required to do so to the extent of such deficiency.
For an elaborate and forcible presentation of the reasons
applicable to this view we refer to *Crawford County* v. *Lind-
say,* 11 Bradw. 261.

The judgment is reversed and the cause remanded.

*Judgment reversed.*