WILLIAM G. WETHERELL

*v.*

WILLIAM M. DEVINE.

*Filed at Springfield March 27, 1886.*

1. MUNICIPAL TAXATION—*constitutional limitation—generally.* Under sections 9 and 10, of article 9, of the constitution, the legislature can not grant the right to assess and collect municipal taxes except to the corporate authorities of the municipalities or districts to be taxed, and for corporate purposes, and not then without the consent of the tax-payers to be affected.

2. SAME—*consent of tax-payers—what so considered.* Where the qualified voters of an incorporated city, at an election duly authorized, adopt a law

affecting the corporate interests and welfare, whereby additional expenses are incurred, which the law requires the city to pay when properly audited, this will amount to an assent on the part of the people therein, to taxation, to meet and defray such expenses, and to carry the law into execution.

3. SAME—"*corporate authorities*"—*election commissioners.* The corporate authorities who alone are authorized by the constitution to levy municipal taxes, are those authorities who are either directly elected by the population to be taxed, or are appointed in some mode to which they have given their assent.

4. Therefore, where the people of an incorporated city, by a vote duly authorized, adopt an election law providing for the appointment of election commissioners, who are to incur expenses, and create a debt upon the city to defray the same, and the law provides for the appointment of such commissioners by the county court, they will be regarded as corporate authorities for the purpose of incurring such expense and indebtedness, and as appointed by the consent of the people of the city.

5. SAME—*auditing election expenses by county judge, as distinguished from the levy of a tax to pay them.* An act of the legislature requiring a municipal corporation to pay certain election expenses when audited by the county judge and his warrant drawn for the amount, is not in violation of the constitutional principle which forbids the levy of municipal taxes by any person or officers other than the corporate authorities. The county judge, in such case, does not provide for the means of payment of the warrants drawn by him.

6. SAME—"*corporate purpose*"—*election expenses.* Taxes assessed and collected by a municipal corporation to pay expenses incurred in the conduct of elections in the corporation, are for a corporate purpose, within the meaning of the constitutional prohibition against municipal taxation for any other than corporate purposes. And it will not affect the corporate character of the purpose that some of such elections may be for other than city officers.

7. SAME—*counties, as distinguished from cities, etc., in the application of the constitutional limitation respecting municipal taxation.* Sections 9 and 10, of article 9, of the constitution, imposing limitations and restrictions upon municipal taxation, have no reference to counties, but relate solely to taxes for cities, towns and villages.

8. The power of the legislature over the revenues of a county is not restricted within the same limits as its power over the revenues of a city, town or village. A county, existing for public purposes only, together with its revenues, in the absence of express constitutional restriction is entirely subject to legislative control. The whole State has an interest in its revenues, and for the public good the legislature must have the power to direct their application.

9. SAME—*requiring county to pay a part of the election expenses of cities, etc.—constitutionality of the Election law of 1885.* The Election law

of 1885, applicable to cities, etc., adopting the same, is not unconstitutional for the reason it requires the county treasurer to pay the salaries of the election commissioners. Such law may be regarded as an equitable apportionment of the burden and expense attendant upon elections in cities, towns and villages, between them and the county in which they may be situate.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS A. MORAN, Judge, presiding.

Mr. H. B. HURD, Mr. ADOLPH MOSES, and Mr. GEORGE SCOVILLE, for the appellant.

Messrs. ROSENTHAL & PENCE, Mr. JAMES W. BEACH, Mr. HENRY O. McDAID, and Mr. W. C. GOUDY, for the appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is a bill in chancery, filed by William G. Wetherell, a citizen and tax-payer of Chicago, against William M. Devine, the treasurer of that city. It alleges, that the "Election law," so-called, which has been discussed in the case of *The People* v. *Hoffman et al., ante,* p. 587, was adopted by the city of Chicago by a majority of 17,000 votes, at an election held on November 3, 1885; that on November 24, 1885, three election commissioners were appointed by the county court, who have since qualified, and organized, as a board, in accordance with the terms of the law, so adopted; that such commissioners are proceeding to incur, and have already incurred, large expenses for office rent, stationery, etc., for which they claim payment from the city treasury, and that the judge of the county court has drawn his warrant in their favor upon the city treasurer, for the amount of such expenses; that the city treasurer is about to pay such amount to them, and threatens to do so, out of the moneys of the city in his hands; that the act in question is unconstitutional; that the board of election commissioners is an illegal body, and has no right to incur expenses to be paid for by the city, and that the warrant so issued is not for a corporate purpose, and is void

and of no legal effect. The prayer of the bill is, that the city treasurer may be enjoined from paying the said warrant or any money to said commissioners on account of their expenditures as a board of election commissioners, and from paying any warrants, drawn by the county judge in their favor for expenses incurred by them, and that the act may be declared void. The bill was demurred to by the defendant below, the demurrer was sustained, and the bill dismissed.

All other questions in regard to the constitutionality of the act concerning elections, passed in 1885, have been considered in the case of *The People* v. *Hoffman*. The only provisions of that act, which are brought before us by this record, are those, relating to the payment of the expenses, attendant upon its execution.

Article 7, entitled "Compensation," of the "Act regulating the holding of elections, and declaring the result thereof, in cities, villages and incorporated towns in this State," which went into force July 1, 1885, (Rev. Stat. of 1885, chap. 46, p. 550,) provides, that the salaries of the election commissioners and of their chief clerk shall be paid by the county; that all expenses incurred by the board of election commissioners shall be paid by the city; that "such salaries and expenditures are to be audited by the county judge, and such salaries shall be paid by the county treasurer, upon the warrant of such county judge, out of any money in the county treasury not otherwise appropriated, and such expenditures shall be paid by the city treasurer, upon the warrant of such county judge, out of any money in the city treasury not otherwise appropriated." These provisions of the act, contained in article 7, are alleged to be repugnant to the 9th and 10th sections of article 9 of the constitution. Those sections are as follows:

"Sec. 9. The General Assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special tax-

ation of contiguous property, or otherwise. For all other corporate purposes all municipal corporations may be vested with authority to assess and collect taxes; but such taxes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same.

"Sec. 10. The General Assembly shall not impose taxes upon municipal corporations, or the inhabitants or property thereof, for corporate purposes, but shall require that all the taxable property within the limits of municipal corporations shall be taxed for the payment of debts contracted under authority of law, such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same. Private property shall not be liable to be taken or sold for the payment of the corporate debts of a municipal corporation."

These sections in the constitution of 1870, or a similar section in the constitution of 1848, have been frequently construed by this court, and by the Supreme Court of the United States. *Updike* v. *Wright*, 81 Ill. 49, and cases there cited; *Weightman* v. *Clark*, 103 U. S. 256; *County of Livingston* v. *Darlington*, 101 id. 407; *Hackett* v. *Ottawa*, 99 id. 86; *Township of Elmwood* v. *Marcy*, 92 id. 289; *Cornell* v. *The People*, 107 Ill. 372. The decisions in these cases lay down three propositions, as clearly deducible from the sections here quoted: First, the General Assembly can not grant the right to assess and collect taxes to any other than the corporate authorities of the municipalities or districts to be taxed; second, taxation by such municipal or corporate authorities must be for corporate purposes; and third, such taxation can not be imposed without the consent of the tax-payers to be affected.

The expenses incurred by the election commissioners, which the city is required to pay, are for office rent, clerk hire, stationery, printing, books, registers, poll-lists, blanks, ballots, ballot-boxes, etc. These expenses are *incurred* by the election commissioners. They are *audited* by the county judge,

and warrants for them are drawn by the county judge, but it is "the governing authority" of the city, which is intrusted with the duty of *providing for their payment.* (Art. 7, sec. 277.) The assessment and collection of taxes for the payment of these expenses are not taken out of the hands of the corporate authorities of the city, but are expressly· left with those authorities.

But it may be said, that the power to impose a tax, and the power to create a debt to be discharged by the levy of a tax, are substantially the same thing, and that, therefore, the election commissioners who incur these expenses, and thereby create the debt to be discharged by taxation, are the authorities, who impose the tax. If this be so, then the question arises, who are the "corporate authorities," referred to in the constitution? We have defined them to be those authorities, who are either directly elected by the population to be taxed, or appointed in some mode, to which they have given their assent. (*Harward* v. *St. Clair Drain. Co.* 51 Ill. 130; *Hessler* v. *Drainage Comrs.* 53 id. 105; *Cornell* v. *The People, supra.*) The bill in this case having been demurred to, its allegations are admitted to be true, and one of those allegations is, that the Election law has been adopted by the votes of the people of Chicago by a majority of 17,000. Although the ˙commissioners have not been elected by the people of the city, yet, by adopting the law, the people have given their assent to the appointment of such commissioners by the county judge. These commissioners have been appointed in a mode to which the population to be taxed have given their assent. They are, therefore, such "corporate authorities," as are contemplated by the above sections of the constitution, just as, in *Cornell* v. *The People,* the South park commissioners, though appointed by the circuit court, and not elected by the people, were held to be corporate authorities, because the people to be affected by the Park act, had adopted it by their votes.

The next question is, whether the taxes to be assessed and collected for the payment of the expenses in question are to be assessed and collected for a "corporate purpose." A corporate purpose has been defined to be "some purpose, which is germane to the general scope of the object, for which the corporation was created," or such as has a legitimate connection with that object, and a manifest relation thereto. (*Weightman* v. *Clark, supra; The People* v. *Dupuyt,* 71 Ill. 651.) A tax for a corporate purpose has been defined to be "a tax to be expended in a manner, which shall promote the general prosperity and welfare of the municipality, which levies it." (*Hackett* v. *Ottawa, supra; Taylor* v. *Thompson,* 42 Ill. 9.) In *Taylor* v. *Thompson* it was held, that a tax, levied upon the property of a township for the purpose of raising bounties to secure volunteers in the late war, was a tax for "corporate purposes."

The expenses mentioned, in the bill in this case, are incurred in the conduct of elections. Is the conduct of an election a corporate purpose? Are taxes, imposed for the purpose of paying the expenses of conducting elections, such taxes, as are assessed and collected for corporate purposes? "Municipal corporations are bodies politic and corporate, * * * established by law, to share in the civil government of the country, but chiefly to regulate and administer the local or internal affairs of the city, town or district, which is incorporated." (1 Dillon on Mun. Corp. sec. 9 b.) A municipal corporation can not share in the civil government of the country, nor regulate and administer its internal affairs, except through its officers. Its chief officers are elected by the people. The cities in this State, which have adopted the general act for the incorporation of cities and villages, are under charters, which provide for the election of aldermen, mayors, city clerks, city attorneys and city treasurers. The conduct of elections is, therefore, a purpose, which is germane to the object, for which municipal corporations are created.

Elections certainly have a legitimate connection with that; object, and a manifest relation thereto. For the government; of municipal corporations can not be carried on, except, through the action of official agents, the chief of whom become such, solely through the medium of elections. Nor can it be denied, that the proper conduct of elections tends to "promote the general prosperity and welfare of the municipality." It does not affect the corporate character of the purpose, that some of the elections, occurring in the city, may be for other than city officers. The city is a part of the county and a part of the State, and its welfare depends, in no small degree, upon the character of the officers, who conduct the county and State governments.

The third and last point, involved in the constitutional limitation under discussion, is, that taxation for these expenses can not be imposed upon the tax-payers of the city without their consent. This objection is met by the statement already made, that the people of Chicago have adopted the Election law by an overwhelming majority. By so doing, they have consented to be taxed for the purpose of raising funds to meet the necessary expenses of carrying the law into execution. We are, therefore, of opinion, that requiring the city to provide for the payment of the expenses, incurred by the election commissioners, is not in conflict with sections 9 and 10 of article 9 of the constitution.

Whether or not that portion of the act, which requires the county to pay the salaries of the commissioners, and which makes it the duty of the governing authority of the county to provide for the prompt payment of such salaries, is valid under the constitution, is a question not made directly by the record in this cause. But as it has been elaborately argued by counsel on both sides, and is likely to arise in giving effect to the law, it may not be improper to state the views we entertain on the subject.

Sections 9 and 10 of article 9 of the constitution, as above quoted, have no reference to counties. They "relate to and regulate the taxes for cities, towns and villages." (*Braun et al.* v. *City of Chicago,* 110 Ill. 186.) Section 5 of article 9 of the constitution of 1848 declared, that "the corporate authorities of *counties,* townships, school districts, cities, towns and villages, may be vested with power to assess and collect taxes for corporate purposes," etc. But when a similar provision was embodied in sections 9 and 10 of article 9 of the constitution of 1870, the word, "counties," was omitted. The decisions, already referred to, which deny to the legislature the power to grant the right to assess and collect taxes to any other than corporate authorities, and for any other than corporate purposes, and subject to the assent of the parties to be taxed, were, most of them, rendered when the question before the court was the construction of section 5 of article 9 of the constitution of 1848. In so far as those decisions have reference to cities, towns and villages, the views, which they express as to the limitations of the legislative power in the respects indicated, apply as well to sections 9 and 10 of article 9 of the constitution of 1870, as to section 5 of article 9 of the constitution of 1848. But, in so far as those cases have reference to counties, the rules of construction, therein announced, do not apply to sections 9 and 10 of article 9 of the new constitution. This becomes apparent upon an examination of section 8 of article 9, which provides, that "county authorities shall never assess taxes, the aggregate of which shall exceed seventy-five cents per one hundred dollars' valuation, * * * unless authorized by a vote of the people of the county." Impliedly, therefore, they may assess taxes, the aggregate of which does not exceed seventy-five cents per one hundred dollars' valuation, without a vote of the people of the county.

The power of the legislature over the revenues of a county is not restricted within the same limits, as its power over the

revenues of a city, town or village. A county is a public corporation, which exists only for public purposes, connected with the administration of the State government, and it and its revenues are alike, where no express constitutional restriction is found to the contrary, subject to legislative control. (*Marion County* v. *Lear*, 108 Ill. 343; 1 Dillon on Mun. Corp. sec. 10 a.) "The revenues of a county are not the property of the county in the sense, in which the revenue of a private person or corporation is regarded. The whole State has an interest in the revenue of a county, and, for the public good, the legislature must have the power to direct its application. The power, conferred upon a county to raise a revenue by taxation, is a political power, and its application, when collected, must necessarily be within the control of the legislature for political purposes." (*Marion County* v. *Lear, supra.*) "Elections belong to the political branch of the government." (*Dickey* v. *Reed*, 78 Ill. 261.) In considering an act of the legislature, which apportioned certain revenues between the city of Springfield and Sangamon county, in which that city is located, Mr. Justice BREESE said, in *The People* v. *Power*, 25 Ill. 187: "This act * * * nowhere proposes to take from the county * * * and give to the city * * * any property belonging to the county, or any revenues collected for the use of the county. *But if it did, it would not be objectionable.*" *County of Richland* v. *County of Lawrence*, 12 Ill. 1; *Sangamon County* v. *City of Springfield*, 63 id. 66; *Logan County* v. *City of Lincoln*, 81 id. 156; *The People* v. *Supervisors*, 100 id. 640; *Harris* v. *Board of Supervisors*, 105 id. 445.

In the light of the views here expressed, it would seem that the legislature was authorized to require the payment of the salaries of these election commissioners by the treasurer of Cook county. In *The People* v. *Stookey*, 98 Ill. 537, it was held, that the county treasurer of St. Clair county could not be compelled to pay the fees of grand and petit jurors for

services in the City Court of East St. Louis, on the ground that "city courts are local in their territorial jurisdiction, are only open to persons within the city, and are maintained for the interest or convenience of the people in the city, and for that reason it would be unjust to impose the burden of maintaining them on the people of the county, who have no benefit from or interest in such courts." It was there held, that the expenses of courts, which were "coëxtensive with the county, and open to all the inhabitants of the county," could be properly paid out of the county treasury. One test, then, of the right to call upon the county to pay for a given service, is the extent, to which that service concerns and benefits all the people of the county.

The election commissioners "have charge of and make provision for" all county elections. Counties elect circuit and county judges, circuit and county clerks, sheriffs, treasurers, coroners, prosecuting attorneys, etc. Where elections in a city or town, which has adopted the law, are held for the purpose of selecting county officers, they concern and interest all the people of the county, and their scope and influence are coëxtensive with the limits of the county. The legislature of this State passed an act, which provided that, where a bridge was constructed in any town, half its cost should be borne by the town, and the other half, on certain conditions, by the county. In the case of *Supervisors* v. *The People,* 110 Ill. 511, the question was whether the county authorities of Will county could be compelled to levy and collect a tax to pay for half the cost of the construction of an iron bridge across the Kankakee river, in the town of Wilmington, in that county. The point was made, that the balance of Will county could not be taxed to pay for a local improvement in the town of Wilmington. So, here, it is contended, that the balance of Cook county can not be taxed to pay the salaries of election commissioners, whose services are rendered in Chicago and the town of Lake. In the Will county case it was held, that

41—116 ILL.

taxation for the building of the bridge was not the levying of a tax for a local corporate purpose, on the ground that the people at large were interested in the construction of bridges and highways. It is difficult to see how the people of the State can be any more interested in the building of bridges and highways than in the election of proper officers in the counties of the State. For "counties are mere political divisions of the territory of the State, as a convenient mode of exercising the political, executive and judicial powers of the State. They were created to perform public, and not private, functions. They are wholly public in their character, and are a portion of the State organization." (*Harris* v. *Board of Supervisors, supra.*)

But it is said, that the commissioners have charge of the local elections, held for the purpose of selecting the local officers in the particular city or town, which may have adopted the law, and that, so far as the salaries are compensation for such local services, they are not a proper subject of taxation against the rest of the county. The law in question seeks to make an equitable apportionment of election costs between the county and the city. Under the general Election law of the State, the counties bear all the expenses of county elections, such as ballot-boxes, blanks, poll books, per diem of special constables, mileage of judges, etc. These expenses are largely increased in a county, where a populous city requires an increase in the number of precincts and election officers. By the terms of the act under consideration, these county expenses, so far as they arise from the participation of the city in county elections, are all borne by the city, and the county is relieved of them entirely. Therefore, the county receives its compensation for paying such portion of the salaries of the commissioners, as it properly belongs to the city to pay, by the city's assuming to discharge those portions of the election expenses, which it properly belongs to the county to pay. If the county assumes a portion of the city's burden, the city

assumes a portion of the county's burden.   A statute which authorizes this to be done can be sustained upon the principle of *commutation.*   Cooley on Taxation, 137, 172; *Board of Supervisors* v. *Campbell,* 42 Ill. 490; *Hunsaker* v. *Wright,* 30 id. 146; *Parmelee* v. *Chicago,* 60 id. 267; *Chicago* v. *Sheldon,* 9 Wall. 50; *Illinois Central Railroad Co.* v. *County of McLean,* 17 Ill. 291; *Bank of Illinois* v. *The People,* 4 Scam. 303.   In *Hunsaker* v. *Wright,* the city of Cairo was exempted from road and county taxes, in consideration of its supporting certain paupers and paying certain jail fees and court expenses.   In *Board of Supervisors* v. *Campbell,* the county was relieved of the support of city paupers and the prosecution of city criminals, in consideration for which the city of Macomb was exempted from county taxes, except for the railroad debt. The prohibition against commutation for taxes, contained in section 6 of article 9 of the present constitution, refers only to taxes to be levied for State purposes.   The salaries of the commissioners are properly payable out of the county treasury.

The decree of the court below is affirmed.

*Decree affirmed.*

MULKEY, C. J., and SCHOLFIELD, J., dissenting.