(No. 28278.— )

THE CITY OF CHICAGO, Plaintiff in Error, *vs.* THE INDUS-TRIAL COMMISSION *et al.*—(EMIL HUBERT, Defendant in Error.)—EMIL HUBERT, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(THE BOARD OF ELECTION COMMISSIONERS OF THE CITY OF CHICAGO *et al.*, Defendants in Error.)

*Opinion filed January 17, 1945—Rehearing denied March 19, 1945.*

BARNET HODES, Corporation Counsel, (J. HERZL SEGAL, and L. LOUIS KARTON, of counsel,) all of Chicago, for plaintiff in error City of Chicago.

DANIEL D. CARMELL, and LEO SEGALL, both of Chicago, for defendant in error Emil Hubert.

CASSIUS M. DOTY, of Chicago, for defendant in error Board of Election Commissioners.

Mr. JUSTICE MURPHY delivered the opinion of the court:

Claimant Emil Hubert was employed by the board of election commissioners of the city of Chicago to assist in the sorting and distribution of ballots. While so engaged he suffered an injury to his right eye resulting in its loss. He filed a claim for compensation under the Workmen's Compensation Act (Ill. Rev. Stat. 1943, chap. 48, par. 138 *et seq.,*) against the city of Chicago, the county of Cook, and the board of election commissioners of the city of Chicago. The arbitrator found that the relation of employer and employee did not exist between claimant and the county of Cook, nor between claimant and the board of election commissioners, but that such relationship was proved as to claimant and the city of Chicago. He recommended compensation be allowed against the city in the amount fixed by statute for such an injury. He dismissed the claim as to the county of Cook and the board of election commissioners. The Industrial Commission confirmed the award and the order of dismissal. In a *certiorari* proceeding before the circuit court of Cook county, the orders of the commission were affirmed. The city and claimant each filed a petition in this court for a writ of error. Both petitions were allowed. The city seeks a reversal of the judgment confirming the award entered against it. Claimant seeks a review of the order dismissing his claim as to the county of Cook and the board of election commissioners. The latter petition is presented in the form of an alternative and requires consideration only in the event that the award against the city is not sustained.

The facts are stipulated. Claimant was employed by the board of election commissioners. His position was designated to be that of a clerk, which, under the rules of the board, included various duties in connection with the registration of electors and conducting of elections. In

general, it pertained to the preparation and handling of ballots, registration lists, the procurement of polling places and the preparation and distribution of ballots and election supplies to the various polling places. In 1940, while engaged in placing ballots in packages, a wire, used as a binding for such packages, struck claimant in the right eye.

Under the facts thus stipulated, it is obvious claimant, on the date of the accident, was an employee of someone and that he received an injury which arose out of and in the course of his employment. The determination of the question as to who was claimant's employer, within the meaning of the Workmen's Compensation Act, is dependent, to a great degree, upon the relation the board of election commissioners bears to the county of Cook and the city of Chicago. This question involves a consideration of the statute which authorizes the appointment of the election commissioners, prescribes their duties and powers, and provides the source from which their expenses and costs of operation must come.

The act commonly known as the City Election Act was adopted in June, 1885. In November of that year, the electors of the city of Chicago adopted it and it has been in effect in that city since that date. Section 1, article II, (Ill. Rev. Stat. 1939, chap. 46, par. 174,) provides that the county court of the county in which the city is located shall appoint the commissioners. It prescribes their qualifications and directs that, when appointed, they are officers of the court. Section 9, article II, (par. 182,) empowers the election commissioners to select judges and clerks of election. It prescribes their qualifications and, after their appointment is approved by the county court, a commission is issued to each and they also become officers of the court. Provisions of similar import are found in section 3, article IIIA, (par. 226.3,) extending to all officers and employees engaged by the commissioners in conducting registrations.

Section 20, article II, (par. 193,) directs the board of election commissioners to make all necessary rules and regulations with reference to the registration of electors and the conducting of elections. It provides that their jurisdictions shall extend to "all elections, general, special, local, municipal, state and county, and all others of every description, to be held in such city or any part thereof at any time."

The election commissioners have no money or property out of which to pay the expenses of their office or the cost of operating. They have no authority to levy taxes or to raise money by any other means.

Section 1, article VII, (par. 277,) fixes the salary of the election commissioners and the chief clerk and directs that they shall be paid by the county. It contains the provision that "All expenses incurred by such board of election commissioners shall be paid by such city." It provides that the salaries and expenditures shall be audited by the county judge. Section 4 of said article (par. 279,) provides that the city shall pay the judges and clerks of election for their services at all city elections, general or special, notwithstanding that other than city officers may be elected and the city is required to pay such judges and clerks where the election is held in a part of the city if a city officer is to be elected at such special election. Section 5 deals with the payment of the judges and clerks at general county and State elections, all exclusively judicial elections, and others, and directs their allocation according to sections 75, 75a and 75b of the election law of April 3, 1872.

It was stipulated that the services of claimant were payable out of money provided by the city of Chicago. The payroll for the clerks and employees of the board of election commissioners, including claimant, was made up periodically under the supervision of the chief clerk of the board of election commissioners, signed by the mem-

bers of the board, approved by the county judge of Cook county and sent to the city comptroller of the city of Chicago. Checks were then drawn on the city treasurer against a regular designated fund.

Several cases have been before this court involving the validity and construction of various sections of the City Election Act. Some involved questions pertaining to the status of the office of an election commissioner and the relation the incumbents bore to the municipality over which they exercised their jurisdiction. In *Wetherell* v. *Devine,* 116 Ill. 631, the validity of that part of the act which imposed the obligation upon the city of paying certain expenses incurred by the election commissioners having jurisdiction of the elections of such city, was considered. It was urged that the act violated sections 9 and 10 of article IX of the constitution in that it authorized the corporate authorities of one political subdivision to contract debts and impose obligations upon another municipality. It was decided that election commissioners are corporate authorities contemplated by the constitution, for whose salaries and expenditures the municipality in which they exercise their powers, and perform their duties, is liable. It was declared that they are such corporate authorities because they are appointed in a mode to which the municipality has given consent, as provided by law. It would necessarily follow that they are officers of the municipality within and for which they are appointed.

In *People ex rel. Judge* v. *Cook County Comrs.* 260 Ill. 345, the question was as to whether the office of election commissioners was within the provision of section 11, article IX, of the constitution, which prohibits the fees, salary or compensation of a municipal officer from being increased or diminished during the term. In discussing the case, it was said that the board of election commissioners was not a municipality. It was held that the election commissioners having been appointed to perform cer-

tain duties under the laws of the State in and for the city of Chicago, they were municipal officers within the meaning of the constitutional provision. The fact that the statute directs that the commissioners, judges and clerks of election are officers of the county court was noted in said case and it was held that such provision had no influence on the question as to whether they were municipal officers receiving their compensation from the municipality in which they exercised their powers. In illustrating that it was consistent for one to be an officer of a municipality and an officer of the court at the same time, the position of a State's Attorney as a county officer and as an officer of the court was cited. By virtue of the statutory provision declaring the election commissioners, judges and clerks of election to be officers of the county court, this court has, in several cases, sustained contempt proceedings instituted against such persons for violation of their official duties. *People ex rel. Broomell* v. *Hoffman,* 322 Ill. 174.

The principles announced in the foregoing cases lead to the conclusion that election commissioners are officers of the municipality in which they exercise their powers and perform their duties, and that such relationship exists notwithstanding the fact that the other officers of the municipality have no jurisdiction or authority over them. There is no inconsistency in their being classed as officers of the city and, at the same time, being officers of the court, insofar as the performance of their duties is concerned. The purpose of the act is apparent. In *People ex rel. Broomell* v. *Hoffman,* 322 Ill. 174, it was said that the legislative intent was to provide means whereby the machinery necessary to the registration of electors and the conducting of elections should be vested in a single agency. In *People ex rel. Rusch* v. *Ladwig,* 365 Ill. 574, it was noted that the purpose of the legislature was to place the machinery of elections and registration under the supervision of the county court.

It would follow that one employed by the commissioners to perform certain duties would be the employee of the municipality for which such duties were to be performed. The stipulation is that claimant's compensation for the services he rendered under his employment with the commissioners was paid by the city. Such stipulation carries the implication that the services which claimant was performing when the accident occurred were rendered for and on behalf of the city. We do not intend to imply by these conclusions that payment of compensation is the sole controlling factor in determining whether the relationship of employer and employee exists in this character of cases, but we hold that the City Election Act evidences a legislative intent to create a board of election commissioners, not as a municipality separate and distinct from the city, but as officers of such city, clothed with all the power necessary to regulate, manage and control the registration and election machinery for and on behalf of the city.

In *County of Cook* v. *Industrial Com.* 327 Ill. 79, an employee in the recorder's office sustained an accidental injury for which he filed a claim against the county of Cook. On the question of notice of the accident to the county it was said: "Who is the employer? The salary of the employee is paid by the county. The recorder represents the county, in that he had power to employ the deceased and to bind the county for the payment of his salary. He, alone, may dismiss an employee. He is therefore the agent or vice-principal of the county." That principle is applicable to the facts in this case. Under the principles announced, the relationship of employee and employer was established within the meaning of the Workmen's Compensation Act as to claimant and the city.

The judgment of the circuit court confirming the award was correct and is affirmed.     *Judgment affirmed.*