636

## SHAMBURGER et al. v. COMMON-WEALTH et al.

Court of Appeals of Kentucky.

June 15, 1951.

Lawrence G. Duncan, Sal Pinto, Louis-ville, for appellant.

A. E. Funk, Atty. Gen., M. B. Holifield, H. D. Reed, Jr., Assts. Atty. Gen., for appellee.

R. Campbell Van Sant, Richard L. Latimer, Frankfort, amici curiæ.

STANLEY, Commissioner.

The question is whether the Commonwealth or Jefferson County is liable for the payment of an employers' portion of the premiums or contributions to be paid for certain officers, their deputies and assistants, under the Old Age and Survivors' Insurance System of the Federal Social Security Act. 42 U.S.C.A. § 401 et seq. Kentucky has authorized the coverage of officers and employees of the state and its local governments and political subdivisions. Chapter 1, Acts of 1951, Extraordinary Session. An agreement has been made for the state officers and employees. Jefferson County also has become a participant in the system for its officers and employees. 42 U.S.C.A. § 418.

The question has been presented by the seldom used simple process of Sec. 637, Civil Code of Practice, of submitting a controversy without formal action. The contentions relate to the sheriff, clerk of the county court, clerk and master commissioner and receiver of the circuit court, and their several deputies and assistants. For brevity, we shall refer merely to the officers, for their deputies and assistants follow their classification.

The circuit court adjudged that for the purpose of employers' contributions toward the security of all of these officers they were county officers and that the fiscal court of Jefferson County should pay the same. The Attorney General contends the judgment is correct and should be affirmed. Jefferson County contends the state is liable for all of the contributions. The position of the Kentucky Commissioner of Economic Security, whose counsel have filed an amici curiae brief, is that all circuit clerks and commissioners are state officers or agents and the legal status of the Jefferson County sheriff and county clerk are to be so regarded. However, it is suggested that the court is not required here to decide whether any of them is either a state or county officer, for in any event the Commonwealth is liable for the premiums or contributions under the special provisions of the Constitution and the Statutes.

The Attorney General relies principally upon Sec. 97 of the Constitution which directs the election in each county of a clerk of the circuit court, and upon Sec. 99, which contains like directions and also specifically designates sheriffs and county

court clerks as county officers. As added emphasis, he points to the time of their election as being different from that at which state officers are elected, Secs. 95 and 99, and the requirements as to residence, Sec. 234. The several statutes implementing these provisions of the Constitution and having reference to these officers are likewise relied upon.

The Social Security Act contemplates an employer-employee relation. Strictly speaking, that is not the relation between a government and its elected officer. But for purposes of the Social Security Act, "The term 'employee' includes an officer of a State or political subdivision." 42 U.S.C.A. § 418(b) (3). By Ch. 1, Sec. 2(c), Acts of 1951, Extraordinary Session, the term is deemed to include both "elective and appointive officers of the Commonwealth, political subdivisions, or interstate instrumentalities." This observation is made in the light of argument as to whether the state or the county has control over these officers, and some statement about the right to "hire and fire," which is often regarded as establishing the employer-employee relationship. There is some complication in the fact that the officers to which the present controversy relates render dual or triple services—to the Commonwealth, to the county, and to individuals who may or may not be citizens of either the state or county, and collect fees from all of them.

The fundamental point, it seems to us, is the fact that contributions (or excise taxes) required by the law to be paid by both employers and employees, is a percentage of wages or compensation paid and received. 26 U.S.C.A. §§ 1400, 1410. Therefore, so far as liability for payment is concerned, the controlling point is the source of the compensation, i. e., who pays the salaries.

Section 106 of the Constitution and the statutes which give it effect control the present case. That section in addition to declaring, "The fees of [all] county officers shall be regulated by law", further provides that in counties having a population of more than 75,000, of which Jefferson is one, the circuit court clerk, the county court clerk, and the sheriff "shall be paid out of the State Treasury, by salary to be fixed by law, the salaries of said officers and of their deputies and necessary office expenses not to exceed seventy-five per centum of the fees collected by said officers, respectively, and paid into the Treasury." In implementing Sec. 106, the statutes fix the salary of the circuit court clerk, county court clerk, and sheriff of Jefferson County at $7,200 a year, and provide that the office expenses shall be fixed by the circuit and county courts and certified to the state Department of Finance. These officers are required to file monthly statements of fees and other collections and of their office expenses to the State Department of Finance and to remit to that state officer the full amount of the collections. Then the salaries of these officers, their deputies and assistants, and office expenses are paid by the State Treasurer upon the warrants of the Department of Finance. KRS 64.345. Thus, the fees and collections of all of these officers are a source of revenue to the state—not to the county. The salaries of the sheriff, circuit clerk and county clerk of Jefferson County are paid by check of the state treasurer. True, there is a limitation upon the total amount, in that they shall not exceed seventy-five per cent of the sums paid into the state treasury by the respective officers. But we cannot read into this any concept of a trust fund with the state acting as a mere trustee of the county to receive the money and disburse part of it to the officers, as the Attorney General suggests. All the collections go into the general fund of the state.

It is of significance that by KRS 64.530, commonly called the general salary act, passed pursuant to the Constitutional Amendment of 1949, Const. § 246, the legislature has declared, "For the purposes of this section, circuit court clerks and master commissioners and receivers in counties other than those containing a population of 75,000 or more" shall be deemed to be county officers and their deputies and assistants county employees. (Emphasis added.) The statute sets apart as not being affected by its terms certain officers of counties of that class, including the circuit clerk, county clerk, sheriff and the master commissioner or receiver, their deputies, assistants and

expenses. The legislature has thereby recognized that in counties of greater population those officers, so far as compensation is concerned, are not to be treated as county officers. In view of all this legislation and the paramount fact that the state is itself the paymaster, we conclude that the state is liable for the payment of the employer's contributions for the sheriff, circuit clerk and county clerk of Jefferson County.

The commissioner and receiver of the circuit court is appointed and the expenses of his office are regulated by the court. The statute fixes his salary at $6,000 a year, payable out of the fees of the office. Unlike the provisions for the other officers referred to herein, the commissioner and receiver retains all his fees and remits annually to the state Department of Finance the amount collected in excess of his salary and official expenses. KRS 64.270. The occupant is not an officer, although he is referred to as an officer of the court, but is an attache or assistant of the chancery court. Shannon v. Ray, 280 Ky. 31, 132 S.W.2d 545. Since unquestionably the chancellor is a state officer, that fact, accentuated by the recognition in KRS 64.530 and the further fact that his excessive collections go into the state treasury, it follows that the state is liable for the premiums on his coverage.

It is scarcely necessary to say expressly that these officers in counties other than of the class of Jefferson County are not affected by this opinion.

The judgment not being in accord with these views, it is

Reversed.