BOARD OF ELECTION COMMISSIONERS OF THE CITY OF PEORIA, Plaintiff-Appellee, v. THE COUNTY OF PEORIA *et al.*, Defendants-Appellants.

Third District    No. 3—88—0373

Opinion filed May 4, 1989.

John Barra, State's Attorney, of Peoria (Donald J. Toohill, Assistant State's Attorney, of counsel), for appellants.

Robert G. Day, Sr., of Peoria, for appellee.

PRESIDING JUSTICE WOMBACHER delivered the opinion of the court:

The trial court granted the motion for summary judgment filed by the plaintiff Board of Election Commissioners of the City of Peoria (the Commission). In so doing, the court found that the defendant County of Peoria, Illinois, was required to pay the salaries of the election commissioners, their executive director, and their assistant executive director, in addition to paying the Commission the election tax revenues required by section 25.05—1a of "An Act to revise the law in relation to counties" (the Counties Act) (Ill. Rev. Stat. 1987, ch. 34, par. 408). The court further found that the defendants were required to pay Social Security Act (42 U.S.C.A. §301 *et seq.* (West 1983)) and Illinois Pension Code (Ill. Rev. Stat. 1987, ch. 108½, par. 7—101 *et seq.*) contributions for the election commissioners, executive director, and assistant executive director. The defendants appeal.

The defendants argued in the trial court and now argue on appeal that recent amendments to section 25.05—1a of the Counties Act indicate the legislature's intent that counties are no longer required to pay election commissioners' salaries in addition to paying election tax revenues to the Commission.

Prior to January 1, 1986, section 25.05—1a of the Counties Act provided for a special tax to pay for the expenses of conducting elections and for maintaining a system of permanent registration of voters. Public Act 84—163 (Pub. Act 84—163, eff. Jan. 1, 1986 (amending Ill. Rev. Stat. 1985, ch. 34, par. 408)), which took effect on January 1, 1986, amended section 25.05—1a. Public Act 84—163 more than doubled the maximum rate at which counties could collect general-purpose taxes. At the same time, it abolished a number of special-purpose tax levies, including the special election tax. Public Act 84—163 provided, however, that counties had to continue paying election commissions an amount at least equal to the proceeds of the election tax collected for 1985. It also deleted the words: "Proceeds of taxes paid over by counties to municipal boards of election commissioners under this Section shall be in addition to such sums as may be

required to be paid by counties under Section 6—70 of The Election Code." (Pub. Act 84—163, eff. Jan. 1, 1986.) Section 6—70 of the Election Code (Ill. Rev. Stat. 1987, ch. 46, par. 6—70) provides that counties shall pay the salaries of the election commissioners, the executive director of the election commission, and in some instances an assistant executive director.

The county, while preparing its 1987 budget, budgeted the total amount required under section 25.05—1a, as amended by Public Act 84—163, and paid over to the commissioners that amount minus the amount budgeted for salaries to be paid to them as required by section 6—70. The defendants' interpretation of Public Act 84—163 has two effects. First, it decreases the amount of revenue available to the Commission, by requiring the Commission to pay its members' salaries from its own revenues. Second, it effectively amends section 6—70 of the Election Code.

■ Regarding any decrease in the Commission's revenues, we find no express indication in Public Act 84—163, its history, or its legislative debate that the legislature intended to effectively decrease funding to election commissions. Examination of the amendment shows only that the legislature sought to streamline the funding and operation of county governments. In support of their argument, the defendants rely on innuendo and implication, but implied amendments are not favored. *Village of Monsanto v. Touchette* (1965), 63 Ill. App. 2d 390, 211 N.E.2d 471.

■ Regarding the effective amendment of section 6—70, as noted, section 6—70 provides that counties shall pay the salaries of the election commissioners. Section 6—70 further provides that those salaries are to be paid from any money in the county treasury not otherwise appropriated. It has long been established that section 6—70 of the Election Code, not section 25.05—1a of the Counties Act, mandates that counties must pay election commissioners' salaries. (See *Wetherell v. Devine* (1886), 116 Ill. 631, 6 N.E. 24; *Bolles v. Prince* (1911), 250 Ill. 36, 95 N.E. 40.) Neither Public Act 84—163, nor any other act, expressly amended section 6—70. In fact, Public Act 84—163 made no mention of section 6—70. Further, section 25.05—1a election tax proceeds do not belong to the county and are already appropriated for conducting elections and registering voters. Accordingly, we find no support for the defendants' interpretation of Public Act 84—163. We therefore agree with the trial court's finding that the defendants are still required to pay the salaries of the election commissioners out of the county treasury pursuant to section 6—70, and are also required, pursuant to Public Act 84—163, to pay the

total amount of election tax revenues to the Commission for the purpose of conducting elections and maintaining voter registration.

The defendants' second argument on appeal is that the trial court erred in finding that they are required to make social security and pension contributions on behalf of the election commissioners, the executive director, and the assistant executive director. The defendants acknowledge that employers must generally make these contributions on behalf of their employees. They argue, however, that even though they pay the election commissioners' salaries, technically the election commissioners are not employees of the County of Peoria. In this regard, they note that section 7—109 of the Pension Code (Ill. Rev. Stat. 1987, ch. 108½, par. 7—109) defines an employee as any person who is paid from municipal funds and who meets "the usual common law rules" applicable to employer-employee relationships. Section 7—109(3) (Ill. Rev. Stat. 1987, ch. 108½, par. 7—109(3)) provides that "the usual common law rules" include situations where the county board fixes the rate of the employee's compensation, appropriates funds for the employee's salary, and otherwise exercises control over the employee. The defendants conclude that since the county has limited control over the election commissioners' salaries and over the funds from which they are paid, and since it exercises no control over them, they are not its employees.

■ We find the defendants' position unpersuasive and their reading of the Pension Code out of context. Section 7—109(3) of the Pension Code also states that "[a]ll persons *** who receive earnings from general or special funds of a county for performance of personal services or official duties within the territorial limits of the county, are employees of the county (unless excluded by paragraph (2) of this section) notwithstanding that they may be appointed by and are subject to direction of a person or persons other than a county board or a county officer." (Ill. Rev. Stat. 1987, ch. 108½, par. 7—109(3).) Paragraph (2) of section 7—109 does not exclude the election commissioners. Accordingly, the commissioners come within this definition of an employee.

Additionally, while "the usual common law rules" of employer-employee relationships set out in the Pension Code relate being an employee to having one's salary fixed by the county and being controlled by the county, examination of this language shows that it is explanatory rather than limiting. (Ill. Rev. Stat. 1987, ch. 108½, par. 7—109(3).) In fact, section 7—109(a)(2) specifically includes in its definition of employees "aldermen, county supervisors and other persons *** who are paid compensation *** for official duties." (Ill. Rev. Stat.

1987, ch. 108½, par. 7—109(a)(2).) Aldermen are not subject to "the usual common law rules" of employer-employee relationships. Further, reading the Pension Code in context with sections 6—21, 6—22, and 6—23 of the Election Code (Ill. Rev. Stat. 1987, ch. 46, pars. 6—21, 6—22, 6—23), it is clear that the legislature intended to include election commissioners as "other persons *** who are paid compensation *** for official duties." Ill. Rev. Stat. 1987, ch. 108½, par. 7—109(a)(2).

■ Our interpretation corresponds with other courts' findings regarding responsibility for social security contributions. In a case involving a similar issue, the Kentucky Court of Appeals held that social security contributions are based on a percentage of the employee's salary, so the controlling factor in determining who is liable for the contributions is the source of the employee's salary. *Shamburger v. Commonwealth* (Ky. 1951), 240 S.W.2d 636.

We note that the Attorney General's opinion which the defendants cite (1965 Ill. Att'y Gen. Unpublished Op., No. UP—1510) relied upon two cases that erroneously interpreted *Wetherell v. Devine* (1886), 116 Ill. 631, 6 N.E. 24, as holding that the city had to pay the commissioners' salaries. (See *People ex rel. Judge v. Board of Commissioners* (1913), 260 Ill. 345, 103 N.E. 282; *City of Chicago v. Industrial Comm'n* (1945), 389 Ill. 411, 59 N.E.2d 805.) *Wetherell* actually held that the commissioners' salaries were properly payable out of the county treasury. (*Wetherell*, 116 Ill. at 643, 6 N.E. at 30.) For the foregoing reasons, we find that the trial court properly held that the defendants were liable for social security and pension contributions for the election commissioners, the executive director, and the assistant executive director.

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

HEIPLE and SCOTT, JJ., concur.