```
|188   348
|f188  ᵇ395
|188   348|
|191   ¹561|
|188   348
|194   ⁵522
|196   392
```

ROBERT C. GIVINS et al.

v.

THE CITY OF CHICAGO.

*Opinion filed December 20, 1900.*

1. CONSTITUTIONAL LAW—*section 9 of article 9 of constitution construed.* Section 9 of article 9 of the constitution, providing that the General Assembly may vest the corporate authorities of cities, towns or villages with power to make local improvements by special assessment or special taxation or otherwise, is a limitation upon the power of the legislature to confer such power upon any bodies other than corporate authorities.

2. SAME—*who are "corporate authorities."* "Corporate authorities" upon whom power to make local improvements by special assessment or special taxation may be conferred, under the constitution, are the authorities of the municipality who are either elected directly by the people to be taxed or appointed in some mode to which they have given their assent.

3. SAME—*Local Improvement act of 1897 is not unconstitutional.* The Local Improvement act of 1897 is not in violation of section 9 of article 9 of the constitution in providing for a board of local improvements and committing to it certain preliminary work relative to the making of local improvements, since a duly adopted ordinance lies at the foundation of an improvement proceeding and the board is not vested with the power to adopt an ordinance. (MAGRUDER, J., dissenting.)

4. SAME—*section 34 of Improvement act of 1897 does not render the act unconstitutional.* Section 34 of the Local Improvement act of 1897, making it the duty of the corporate authorities to pass an ordinance for an improvement recommended by the board if such improvement has been petitioned for by the owners of a greater part of the property in one or more contiguous blocks abutting upon the street to be improved, does not render the act unconstitutional, since the corporate authorities may refuse to pass the ordinance recommended by the board, although it must pass *an* ordinance for the improvement, not because the board has recommended the improvement, but because property owners have petitioned for it.

5. SAME—*legislature did not intend to vest power to make local improvements in the board.* It was not the purpose of the legislature, by the act of 1897, to vest improvement boards with power to make local improvements by special assessment or taxation, but rather to create a municipal agency to ascertain and determine preliminary questions, which, when so determined, operate as restrictions upon the power of the corporate authorities over property of citizens.

6. SAME—*when instruction as to power of improvement board is not ground for reversal.* An instruction that the jury "are not to consider any question of the necessity for nor the propriety of" the improvement, is not ground for reversal because it unduly magnifies the power of the improvement board by stating that it is the "sole and only judge of the necessity for and of the mode, manner and extent of the improvement referred to in the petition and the ordinance in this case," since the jury can only pass upon the question of benefits.

APPEAL from the County Court of Cook county; the Hon. WILLIAM T. HODSON, Judge, presiding.

FRANK S. LENERT, for appellants:

Municipal corporations which, by the constitution of 1870, (art. 9, sec. 9,) a legislature is permitted to invest with power to make local improvements by special assessment or special taxation of contiguous property, are public local corporations exercising some governmental functions.

Where, by its charter, the responsibility of ordering improvements and prescribing their extent and mode is with the city council, the power to decide as to the extent or mode cannot be delegated. *Railway Co.* v. *Chicago*, 144 Ill. 391.

The city council cannot transfer its legislative powers, and the public trusts imposed upon it, to a mere executive officer. *Chicago* v. *Trotter*, 136 Ill. 430; *Kilbourne* v. *Thompson*, 163 U. S. 168.

The legislature cannot vest such powers in any corporate authority other than a city, town or village. It is denied by implication by the express conferment of authority to vest such power in the corporate authorities specified. *Updike* v. *Wright*, 81 Ill. 49.

DANIEL E. BARNARD, (SAMUEL J. HOWE, of counsel,) also for appellants.

CHARLES M. WALKER, Corporation Counsel, ARMAND F. TEEFY, and WILLIAM M. PINDELL, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a judgment confirming a special assessment for grading, macadamizing and curbing a system of streets in Chicago. The streets were Longwood avenue from Ninety-fifth street to One Hundred and Seventh street; Walden parkway from Ninety-seventh street to Ninety-ninth street; Ninety-ninth street from Longwood avenue to Wood street; and One Hundred and Third street from South Leavitt street to the right of way of the Pittsburg, Cincinnati, Chicago and St. Louis Railroad Company.

A great number of objections were filed by appellants in the court below, and it is somewhat difficult to determine from the briefs and arguments how many and which of them are insisted on in this court. The most important objection made, however, and urged upon our attention, is that the act of June 14, 1897, entitled "An act concerning local improvements," is unconstitutional and void because in conflict, as it is claimed, with section 9 of article 9 of the constitution, which, on this subject, provides: "The General Assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of contiguous property, or otherwise." The point made against the statute is, that it undertakes to confer on the board of local improvements the power which the constitution provides shall be vested in the corporate authorities of the municipality, and that such a board is not such corporate authority.

This provision of the constitution is a limitation upon the power of the General Assembly to confer the same power upon any authorities or bodies other than the corporate authorities. (*Cornell* v. *People ex rel.* 107 Ill. 372.) And we have held in numerous cases that the corporate authorities upon whom the power of taxation may be conferred, within the purview of this provision of the consti-

tution, are the authorities of the municipality who are either elected directly by the people to be taxed, or appointed in some mode to which they have given their assent. (*Cornell* v. *People ex rel. supra; Wetherell* v. *Devine*, 116 Ill. 631; *Snell* v. *City of Chicago*, 133 id. 413.) It seems clear, without argument or citation of cases, that the board of local improvements provided for in the act authorizing the creation of such board cannot be held to be the corporate authorities of the city or village, but that, as cities and villages are now organized and governed under the general law for the incorporation of cities and villages, their corporate authorities are the city council of cities and the trustees of villages. But can it be said that the statute in question purports to vest power in the board of local improvements to make such improvements by special assessments, special taxation or otherwise? If it does not, the act is not unconstitutional simply because it provides for the creation of such a board and commits to it certain preliminary work, mainly in the line of ascertaining the facts necessary for the council to know before determining whether or not to provide for the making of the improvement and the levying of the assessment or special tax. An ordinance duly adopted lies at the foundation of the proceeding, and the board is not vested with any power to adopt an ordinance. That, under the statute, could in this case only have been done by the city council of the city of Chicago. Before the enactment of this statute the council might have required much of this preliminary work to be done by one of its committees, and while some of the former powers of the council in this respect have by the act been taken away and conferred on the board, still no power has been conferred on the board which by the constitution could only be vested in the council. It is certainly no violation of the constitution for the legislature to prescribe conditions to be complied with before the corporate authori-

ties can make local improvements at the expense of the property owners. It has never been supposed that the provision applicable to cities of less than 25,000, (now 50,000, as amended,) providing that no ordinance for such an improvement shall be adopted unless petitioned for by a majority of the owners of the abutting property, was unconstitutional. In such a case the power to make the improvement or to levy the tax is not vested in such property owners, but the provision is a mere restriction upon the exercise of a power which, when unrestrained, had doubtless often been exercised with great injustice to and oppression of the property owner.

Section 5 of the act is also a restriction upon the exercise of this power. It provides that no ordinance for such an improvement shall be considered or passed by the city council or board of trustees unless it shall have first been recommended by the board of local improvements. If this board has performed its duties it is fully informed of the necessity of the work, of the nature, character and cost of the improvement, and of the views and interests of those whose property is to be assessed to pay for it, before it makes its report and recommendation to the city council or board of trustees. The corporate authorities could not act intelligently in such matter without first having obtained the information which, under the statute, it is the duty of the board to obtain before any ordinance can be adopted by the council. Preliminarily, the property owners have been notified and afforded a hearing. This opportunity for the property owners to be heard, as a preliminary step in the proceeding, is one of the important provisions of the act. Former statutes contained no similar provision.

It is claimed, however, the council or board of trustees has no discretion under the statute, but must adopt the ordinance as framed and presented by the board of local improvements. This is a misapprehension of the meaning of the act. Section 34 contains the only provi-

sion which makes it the duty of the corporate authorities to adopt an ordinance providing for the improvement recommended by the board, and that is confined to cases where the owners of the greater part of the property in any one or more contiguous blocks abutting on the street or public place to be improved shall petition for the improvement. That section provides, among other things, that after the hearing before the board, and after it has determined the nature and cost of the improvement, it shall prepare and transmit to the legislative body,—that is, to the corporate authorities,—"a draft of an ordinance therefor, together with an estimate of the cost, * * * and shall recommend the passage thereof, which recommendation shall be *prima facie* evidence that all the preliminary steps required by law have been taken; and thereupon it shall be the duty of such legislative body to pass an ordinance for the said improvement, and take the necessary steps to have the same carried into effect." This provision does not make it the duty of the council to pass an ordinance providing for the improvement because the board of local improvements has recommended it, but because, primarily, the owners of the abutting property have petitioned for it. Nor is it made the duty of the council to adopt the "draft of an ordinance" prepared and presented by the board, but only "to pass *an* ordinance for the said improvement." Clearly, this provision of the statute does not vest in such board the power to make the improvement and levy a special assessment or a special tax to pay for it. There is no other section of the statute, so far as we have discovered, which provides what the council shall do when it has received the recommendation of the board and the ordinance which it has prepared, except that section 11 requires that where the estimated cost of the improvement exceeds $100,000 the ordinance shall be referred to the appropriate committee, and, with the recommendation and estimates, published, with the proceedings of the

188—23

council, at least one week, before any action shall be taken thereon. True, as before said, section 5 contains the negative provision that no ordinance for any local improvement to be paid for by special assessment or special taxation shall be considered or passed unless first recommended by the board of local improvements. But as we construe the statute the city council or board of trustees may, in its discretion, refuse to pass an ordinance submitted and recommended by the local board, notwithstanding it may be that it must pass *an* ordinance for the improvement where such improvement has been petitioned for by the requisite number of property owners.

That it was not intended by the legislature to vest the power to make local improvements by special assessment or special taxation in the board created by the act is further shown by the first section, where, following, in the main, the language of previous acts, as well as the constitution, which had been previously construed by this court, it is provided "that the corporate authorities of cities, villages and incorporated towns are hereby vested with the power to make such local improvements as are authorized by law by special assessment, or by special taxation, of contiguous property, or by general taxation, or otherwise, as they shall by ordinance prescribe." We think it is evident that it was not the purpose of the General Assembly to vest these boards with power to make local improvements and to levy special taxes and assessments to pay for them, but, rather, to create a municipal agency to ascertain and determine questions of a preliminary character, which the corporate authorities may not be so well able to ascertain and determine, and which, when so determined, operate as restrictions upon the exercise of the great power over the property of the citizen which the corporate authorities of municipalities possessed. Whether these boards do or will subserve the purpose of their creation does not affect the validity of the statute.

We are of the opinion that the statute does not violate the provision of the constitution above set out, in the respect mentioned.

It is also contended that the ordinance is defective in its description of the parts of streets to be improved, in this: that it does not state the width of what is called the "wings," at the intersections to be improved. The width of these wings would depend on the width of the sidewalk of the intersecting street, and it is said that there is nothing in the record to show what the width of the sidewalk on any of the intersecting streets is. The sidewalks were not to be paved, and the width of the wings so to be paved is a matter of easy ascertainment, as said in *County of Adams* v. *City of Quincy*, 130 Ill. 566. See, also, *Woods* v. *City of Chicago*, 135 Ill. 582; *People* v. *Markley*, 166 id. 48. We think there is no such uncertainty or indefiniteness in the description as to justify a reversal on that ground.

It is also claimed that the court erred in giving to the jury this instruction:

2. "The jury are instructed, as a matter of law, that the board of local improvements of the city of Chicago is the sole and only judge of the necessity for and of the mode, manner and extent of the improvement referred to in the petition and the ordinance in this case, and the jury are not to consider any question of the necessity for nor of the propriety of such improvement."

The point urged is, that if this instruction properly construes the statute it renders the law unconstitutional for reasons hereinbefore considered. Conceding that the first part of the instruction was erroneous, still it could not have affected the verdict, for it was still true, as stated in the instruction, that it was not within the province of the jury "to consider any question of the necessity for nor of the propriety of such improvement." If the instruction unduly magnified the power of the board of local improvements over that of the city council, still

it correctly informed the jury as to the limits of their power, and that alone concerned the jury in arriving at their verdict. The only questions for the jury to decide were whether the property of the objectors was assessed more than it would be specially benefited by the improvement, and whether it was assessed more than its proportionate share of the cost of the work. (Hurd's Stat. secs. 48, 49, p. 366.) The jury, by their verdict, decided both of these questions in favor of petitioner, and while it is claimed the verdict was against the evidence, we see no grounds for disturbing the finding.

Other questions have been raised which we have considered, but we do not find that any error injurious to appellants was committed.

The judgment will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE MAGRUDER delivered the following dissenting opinion:

The main objection to the confirmation of the assessment, as filed by the appellants, relates to the constitutionality of the act of June 14, 1897, under which the present proceeding was had.

I think that the act of June 14, 1897, creating a board of local improvements, is unconstitutional as being in violation of section 9 of article 9 of the constitution of 1870. The city of Chicago, where the present proceeding was instituted, has a population of more than 25,000; and the validity of the act need only be considered, so far as it applies to cities of that class.

The proceedings for the improvement, sought to be made by the present suit, were begun upon the motion of the board of local improvements, and not by virtue of any petition therefor, filed in accordance with the terms of said act. Indeed, we have held, that the provisions of the act, which require a petition, signed by the owners of a majority of the property, to be presented, before the

council can pass an ordinance for a local improvement, apply only to cities, having a population of less than 25,000, and not to cities having a population of more than 25,000. (*City of Bloomington* v. *Reeves*, 177 Ill. 161; *Patterson* v. *City of Macomb*, 179 id. 163). Section 7 of the act of June 14, 1897, "concerning local improvements," provides, that all ordinances for local improvements to be paid for wholly or in part by special assessment or special taxation, shall originate with the board of local improvements. Said section 7 confers upon the board the power to originate a scheme for any local improvement to be paid for by special assessment or special taxes, either with or without a petition. The same section provides that, if, upon the hearing referred to in the last sentence thereof, the board shall deem the improvement desirable, they shall adopt a resolution therefor, and prepare and submit an ordinance therefor, as thereinafter provided. Section 8 of the act provides that, after the hearing therein referred to is had, the board shall cause an ordinance to be prepared for the improvement to be submitted to the council, or the board of trustees, as the case may be; and that such ordinance shall prescribe the nature, character, locality, and description of such improvement, and shall provide whether the same shall be made wholly or in part by special assessment or special taxation of contiguous property; and if in part only, shall so state. Section 9 provides that, with any such ordinance presented by said board to the city council shall also be presented a recommendation of such improvement by the said board, signed by at least a majority of the members thereof. The same section provides that this recommendation shall be *prima facie* evidence, that all the preliminary requirements of the law have been complied with, etc. Section 10 of the act provides that, together with the ordinance and recommendation referred to in section 9, there shall be presented to the city council, or board of trustees, an estimate of the

cost of such improvement, itemized so far as the board of local improvements shall think necessary, etc. Said section 7 also provides, that the board shall cause an estimate of the cost of said improvement to be made in writing by the public engineer.

It thus appears, that the act confers extraordinary powers upon the board of local improvements in regard to the making of such improvements by special assessment or special taxation. The board is authorized to give notice, and have a public hearing upon the subject of the necessity of the proposed improvement, the nature thereof, or the cost thereof as estimated; but the board is not obliged, by reason of such hearing, to abandon or modify the scheme resolved upon by it; on the contrary, it may, in spite of the hearing, adhere to such scheme. After authorizing the board to have the hearing aforesaid, and to have an estimate of the cost of the improvement made, and after conferring upon it the power to originate a scheme for the local improvement to be paid for by special assessment or special tax, and to originate the ordinance therefor, and draft, and submit such ordinance to the common council, the act then provides in section 5 as follows: "No ordinance for any local improvements, to be paid wholly or in part by special assessment or special taxation, shall be considered or passed by the city council or board of trustees of any such city, village, or town, unless the same shall first be recommended by the board of local improvements provided for by this act."

It is manifest, that this act deprives the common council of all discretionary power in the matter of making local improvements by special assessment or special taxation. The common council might, perhaps, have the right to refuse to pass an ordinance submitted to it by the board of local improvements. At any rate, there is no prohibition against the refusal on the part of the common council to pass such an ordinance. But, if it passes

any ordinance, providing for a local improvement, to be paid for by special assessment or special taxation, it can only pass such ordinance, as is submitted to it by the board of local improvements. The common council is forbidden not only to pass, but also to consider, any ordinance for a local improvement, unless the same is first recommended by the board of local improvements. The act robs the common council of the power to take any independent action in the matter, and makes the council the mere agent of the board of local improvements. The common council is reduced by the act to a mere machine for the execution of the will of an outside force, to-wit: the board of local improvements. Substantially, and in effect, the act substitutes the board of local improvements for the common council in all matters, relating to the making of local improvements, which involve the exercise of judgment and discretion. The necessity for the improvement, and the nature of it, and the cost of it, are all determined in advance for the common council by the board of local improvements. Even the ordinance for the improvement is framed in advance by the board of local improvements, and submitted to the common council without the power in the latter to change or modify the ordinance, or exercise its own will or judgment in relation thereto, except, as has already been stated, so far as it may have the right to refuse to pass any ordinance.

Section 9 of article 9 of the constitution provides that "the General Assembly may vest the corporate authorities of cities, towns, and villages with power to make local improvements by special assessment, or by special taxation of contiguous property, or otherwise." By this provision of the constitution only the "corporate authorities" of cities can be vested by the legislature with power to make local improvements by special assessment or special taxation. As the act of June 14, 1897, vests the board of local improvements with the power to make such improvements by special assessment or special tax-

ation, such power is not rightfully conferred, unless the board of local improvements, provided for in the act, can be regarded as a corporate authority of the city, in which it performs its functions. Technically, the common council, which is undoubtedly a corporate authority of the city, makes the local improvement provided for in the act, because it passes the ordinance for the improvement. But, inasmuch as it passes such an ordinance only, as is prepared for it by the board of local improvements, and does so at the dictation of the board, the board, and not the common council, is really, and in effect, the authority, which makes the improvement.

The question then arises, whether the boards of local improvements, created by the act in question, are "corporate authorities" within the meaning of section 9 of article 9 of the constitution.

Who are the "corporate authorities" of cities, towns, and villages, whom the constitution clothes with the power to make local improvements by special assessment, or special taxation of contiguous property, or otherwise? They have been defined by this court in many decisions. The case of *Cornell* v. *People*, 107 Ill. 372, reviews the earlier decisions upon this subject, and makes the following statement, as the result of such review: "The corporate authorities, intended by the language of the constitution, upon whom the power of taxation was conferred, are such municipal officers as have been elected directly by the people of the district, or appointed in some mode to which the people of the district have given their assent." This language was used in reference to a similar provision of the constitution of 1848, but the opinion in *Cornell* v. *People, supra,* proceeds to say: "Section 9 of article 9 of the constitution of 1870 has received the same construction that was placed upon the constitution of 1848 on the same subject. (*Updike* v. *Wright*, 81 Ill. 49; *Dunham* v. *People*, 96 id. 331). In the last case cited it is said: 'The clause in the constitution of

1870, adopted in the light of this construction, must be construed in the same manner as was construed the kindred clause in the constitution of 1848.'" In *Cornell* v. *People, supra,* the following language, used in *Hessler* v. *Drainage Comrs.* 53 Ill. 105, was quoted with approval: "By the term 'corporate authorities' must be understood those municipal officers who are either directly elected by the people, or appointed in some mode to which they have given their assent." In *Cornell* v. *People, supra,* the South Park Commissioners, though appointed by the circuit court and not elected by the people, were held to be "corporate authorities," because the people to be affected by the Park act had adopted it by their votes.

Later, in *Wetherell* v. *Devine,* 116 Ill. 631, certain election commissioners, although they were not elected by the people of the city of Chicago, were yet held to be such "corporate authorities," as were contemplated by section 9 of article 9 of the constitution, because the law, providing for their appointment, was adopted by the votes of the people of the city; and such commissioners were held to be appointed in a mode, to which the population to be taxed had given their assent. In *Wetherell* v. *Devine, supra,* we said: "The question arises, who are the 'corporate authorities' referred to in the constitution? We have defined them to be those authorities, who are either directly elected by the population to be taxed, or appointed in some mode to which they have given their assent."

Again, in *Snell* v. *City of Chicago,* 133 Ill. 413, we said: "The constitutions of 1848 and of 1870 have both been interpreted by this court to mean, that the legislature has no power to grant to any other than the corporate authorities of a city the right to assess and collect taxes, and that such taxation must be for corporate purposes; and that 'the corporate authorities' are those, who are either directly elected by the people of the municipality, or appointed in some mode, to which they have given

their consent." The same doctrine is also announced in *Wilson* v. *Sanitary District,* 133 Ill. 443.

It is clear that the members of the board of local improvements, provided for by the act of June 14, 1897, are not "corporate authorities" within the meaning of the constitution. By the terms of the act, the board of local improvements, in cities having a population of 25,000 or more, consists of five members, to-wit: a commissioner of public works, a superintendent of streets, a superintendent of sewers, a superintendent of special assessments, and a city engineer. These five members, constituting the board, are appointed, so far as the city of Chicago is concerned, by the mayor of the city. They are not officers elected by the people of the city. Nor is the act of June 14, 1897, which provides for their appointment, an act which was adopted by the votes of the people of the city of Chicago. The act itself contains no provision for the submission of the question of its adoption to the people of any of the cities, towns, or villages therein named. The first section of the act provides, that it shall apply only to such cities and villages, as then are, or thereafter shall become, incorporated under the "City and Village Act," and to all cities, villages, and incorporated towns which had theretofore adopted article 9 of the "City and Village Act," "or shall hereafter adopt this act as herein provided." Section 97 of the act of June 14, 1897, provides as follows: "Any city or incorporated town or village may, if it shall so determine by ordinance, adopt the provisions of this act," etc.

The only method of adoption prescribed by the act is an adoption thereof by ordinance; but there is no provision for the adoption of the act by the votes of the people.

Therefore, the members of the board of local improvements in cities having a population of 25,000 or more are not "corporate authorities" within the meaning of the constitution, because they are appointed by the mayor, and not elected by the people; and because the act, pro-

viding for their appointment by the mayor, has never been adopted by the citizens of any city in the State, and contains no provision for such adoption by the votes of the people of any city. It necessarily follows, as it seems to me, that the act of June 14, 1897, is unconstitutional in the respects above indicated, and that the court below erred in not sustaining the objection made to the confirmation of the assessment upon this ground.

Even if the validity of the act should be considered with reference to cities having a population less than 25,000, it cannot be said that the requirement as to a petition signed by a majority of the property owners relieves the act of its unconstitutionality, or has any bearing upon the question of its validity. The petition merely puts the taxing body in motion, but has nothing to do with the control of its discretion, after it has been put in motion.